#### Mary Batla v. F. W. Goodell et al.

##### Decided January 8, 1909.

**1.—Waters—Diversion of Surface Water—Damnum Absque. Injuria.**

When the adjoining proprietor, in the ordinary use of his property, diverts the surface water to and upon the land of his neighbor, he is not liable, and the injury that results therefrom is *damnum absque injuria.*

**2.—Same—Overflow—Obstruction of Waters in Streams.**

The owner of land has no right to obstruct the flow of water in a stream by building a dam or embankment on his land thereby causing it to overflow upon the land of his neighbor, although the immediate cause of the overflow be due to ordinary rainfall.

**3.—Same—Pleading—Watercourse.**

A statement filed in Justice Court that defendant constructed a dam across a swag which acted as an outlet for the natural flow of surface water for several miles above without having sufficient openings to allow the water to pass through, and that the water thus obstructed flowed back upon plaintiff's land, was sufficient to raise the issue of obstruction to a watercourse.

**4.—Pleading—Justice Courts.**

The form in which a party to a suit in the Justice Court may state his cause of action, is of no importance. If from all that is stated, written or oral, the court can ascertain what right the plaintiff asserts, the pleading will be held sufficient.

**5.—Overflow—Water Course—Damages.** ·

One constructing a dam on his own land across a well defined drainage way containing running water for six months in the year and acting as an outlet for the natural flow of surface water for several miles above and thus causing the water to overflow the land of another, was liable for the resulting damages.

Appeal from the County Court of Colorado County. Tried below before Hon. J. J. Mansfield.

*Grobe & Boyd,* for appellant.

*Brown, Carothers & Brown,* for appellees.—The owner of land may at his pleasure withhold the water falling on his property from passing to that of his neighbors, and in the same manner may prevent the water falling on the land of the latter from coming on his own. In a word, neither the right to discharge nor the right to receive surface water can have any legal existence except from a grant, express or implied. The fact that surface water in its primitive condition follows a depression or swag, does not deprive a landowner of his right to prevent its discharge from the land of his neighbor upon land belonging to him. Gross v. Lampasas, 74 Texas, 195; Barnett v. Matagorda Rice & Irrigation Company, 98 Texas, 355; 30 Am. & Eng. Enc. of Law, p. 333; Osburn v. Connor, 46 Cal., 346; McDaniel v. Cummings, 83 Cal., 545.

McMEANS, Associate Justice.—This suit originated in the Justice Court of Colorado County, wherein the appellant recovered a judgment of $130. On appeal by the appellees to the County Court

the case was tried before a jury, and after conclusion of the testimony the court, upon motion of the appellees, instructed the jury to return a verdict for them, which was done, and the judgment having been rendered thereon the appellant brings the case before us on appeal.

The plaintiff, appellant here, filed in the Justice Court a statement of the nature of her cause of action, which is as follows: "That prior to the first day of May, 1907, the said defendants as lessees of the Garwood Irrigation Canal, and in control and operation of same, constructed a dam for the purpose of holding the water in said canal a few hundred yards west of the public road leading from Vox Populi to Garwood in said county, at a point just south of and adjoining the premises of the plaintiff herein, said dam being constructed across a swag, which acted as an outlet for the natural flow of the surface water for several miles above said point; and in constructing same failed to leave sufficient openings to allow the said water to pass through, which said dam caused the said water to back up over plaintiff's growing crop and damage and destroyed same as follows: Twenty-four acres of meadow grass, $40; six acres of cotton, $72; six acres of cotton damaged, $18; two acres of corn, $25; three acres of corn damaged, $18. Total damages, $173. The said damages are the direct and proximate result of the back water caused by the said dam during May and June, 1907, for all of which defendants are liable and for which plaintiff prays judgment." Defendants answered by general exception and general denial.

Only two questions are presented in appellant's assignment of error, viz.: Did the court err in instructing a verdict and in refusing to grant appellant's motion for a new trial? Plaintiff claimed that her growing crops were injured or destroyed by water which was caused to flow back upon her land by an earthen dam which the defendants had constructed on their own land across a swag or swale, which from time immemorial had been a natural drain for the escape of surface water flowing off a large scope of country extending several miles north and northwest of her land.

The evidence showed that the obstruction which impeded the flow of surface water was an embankment upon land adjoining plaintiff's on the south, and was erected to hold the waters of an irrigation canal. Formerly the canal had been constructed across the drain so that the waters of the canal passed across by means of a wooden flume which spanned the drain. This flume was about 150 feet in length and from two to five feet above the ground at the drain. North of plaintiff's land, and about one-half mile north of the canal, is a public road, and where it crossed the drain the county had erected for public travel a bridge thirty feet in length. The source of the depression or drain is three or four miles north of the canal in what is known as "Long Pond," and all the water falling in Long Pond and between it and the canal and for a distance of a half mile east to a mile and a half west of the drainage-way seeks its outlet through this drain. From its source to a point one-half mile south of the embankment the drain is not designated by any name, but is a well defined drainage-way. From the point last mentioned it is a well defined branch or creek, commonly known as "Abell's Branch." While

the drain north of the embankment was not fed by springs, it contained running water about six months in the year. In the early part of 1907 the defendants, who were then operating the irrigation canal, removed the flume, under which the water passed, and raised earthen embankments across the drain so as to hold the waters of the canal; and to afford a means of passage for the waters of the drain, put a twenty or twenty-four inch tile drain pipe under the canal, which was wholly insufficient for the purpose. In May or June, 1907, heavy rains—but not heavier than was usual at that time of year—fell in the vicinity, and the surface water flowed down the drain as far as the dam in great volume where it was checked by the embankment and caused to flow back upon plaintiff's land and crops and damaging and destroying the same. The water remained upon plaintiff's land until the fourth day after the rain, when defendants cut a six foot opening through the obstruction to permit its more rapid escape and it took the water three weeks after the embankment was cut to pass off.

The common law rule is that when the adjoining proprietor, in the ordinary use of his property, diverts the surface water to and upon the land of his neighbor, he is not liable, and the injury that results therefrom is *damnum absque injuria*. (Gross v. City of Lampasas, 74 Texas, 197; Barnett v. Matagorda Rice & Irrigation Co., 98 Texas, 355; Booker v. McBride, 16 Texas Civ. App., 348.)

The facts of this case and in the case last cited are very similar, and both in some of their features are similar to the Gross case. There is, however, a material distinction between that case and this. In this case the evidence shows that plaintiff's land was drained by a well defined drainage-way, which contained running water about six months in the year, and that by reason of the construction of the embankment by defendants the water was not permitted to pass off as formerly, but was checked by the embankment, and a pond about six feet deep was formed which extended back upon plaintiff's land and over her growing crop to the depth of from two to four feet. In the Gross case the channel obstructed contained water only when rain fell, and it passed in a few hours after cessation of the rain, leaving the channel as free of water as it was before. As said in the Gross case, a party has the right to build a wall upon his own land to prevent its overflow by surface water. But he has no right to obstruct the flow of water in a stream, thereby cause it to overflow upon the land of his neighbor, although the immediate cause of the overflow be due to ordinary rainfall. "He may build a wall or embankment for the protection of his own property from surface water . . . but he has no right to build his dam or embankment in the stream so as to obstruct the natural flow of the water and thereby cause injury to the property of another." (Booker v. McBride, *supra;* Gembler v. Echterhoff, 57 S. W., 315.)

Appellees urge that the contention of appellant that the drain was a watercourse, was not raised by the pleadings or evidence, and therefore that contention should not be considered. What we have said above sufficiently discloses that in our opinion the drainage-way was a watercourse. It is true that it was not specifically alleged to

be such in the statement of appellant's cause of action, but it was there stated that appellees constructed the dam across a swag which acted as an outlet for the natural flow of surface water for several miles above, without leaving sufficient openings to allow the water to pass through, and the water thus obstructed flowed back upon her land and damaged and destroyed her growing crops. This statement was filed with the Justice Court and no pleadings were subsequently filed by appellee. The same exactness of pleadings is not required in Justice Courts or in cases originating there as is required in the District and County Courts, nor will they be subjected to the same technical scrutiny. As said by Judge Brown of the Supreme Court in Rector v. Orange Rice Mill Co., 100 Texas, 591, in answering a certified question from this court, referring to article 1603, Revised Statutes, providing that pleadings in the Justice Court shall be oral except where otherwise specially provided, etc., "The effect of the article is that no rule is prescribed, except that the statement which may be made by the parties shall be oral and may be entered by the justice of the peace on his docket. Our courts have uniformly held that the form in which a party to a suit in the Justice Court may state his cause of action or grounds of defense, is of no importance. An examination of the cases cited below will sustain the proposition that if from all that is stated, written and oral, the court can ascertain what right the plaintiff asserts, or what defense the defendant interposes, the pleading will be held to be sufficient. (Doyle v. Glasscock, 24 Texas, 201; Texas & Pac. Ry. v. Wright, 2 Texas App. Civ. Cases, sec. 339, p. 292; Kellers v. Rippien, 9 Texas, 443; Long v. Cude, 75 Texas, 225.)" We think that the pleadings under the rule above announced were sufficient to admit proof of the character of the drainway.

For the error in instructing a verdict and refusing to grant a new trial the judgment of the court below is reversed and the cause remanded.

*Reversed and remanded.*