HOEFS et al. v. SHORT. (No. 625.)

(Court of Civil Appeals of Texas. El Paso. Nov. 23, 1916. Rehearing Denied Jan. 5, 1917.)

1. WATERS AND WATER COURSES ⬦115—SURFACE WATER.

A creek flowing through a well-defined channel and well-defined banks and bed fed by rains falling within its watershed outside of the defendants' land, and through which water flows only after a rainfall, was not diffused surface water flowing across defendants' land which could be regarded as their absolute property.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 126; Dec. Dig. ⬦ 115.]

2. WATERS AND WATER COURSES ⬦38—NATURAL WATER COURSES—RIPARIAN RIGHTS.

A creek flowing through a well-defined channel and well-defined banks and bed fed by rains falling within its watershed outside of the defendants' land, and through which water flows only after a rain fall, is not water flowing in a water course to which riparian rights attach or of which an appropriation under the doctrine of riparian rights could be made.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 30; Dec. Dig. ⬦ 38.]

3. WATERS AND WATER COURSES ⬦130—APPROPRIATION OF RIGHTS—TITLE TO WATERS—WATER RIGHTS IN LANDS OF STATE.

Title to water in a creek flowing through a well-defined channel and well-defined banks and bed, fed by rains falling within its watershed outside of the defendants' land, and through which water flows only after a rainfall, not having been legally appropriated, and not being subject to appropriation under the doctrine of riparian rights, remains in the state and the water is subject to appropriation under Acts 33d Leg. c. 171, § 1.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 145; Dec. Dig. ⬦ 130.]

4. WATERS AND WATER COURSES ⬦152(11) — SURFACE WATERS—APPROPRIATION.

A decree enjoining the defendants from placing or maintaining any obstruction across

a well-defined channel in which surface water flows, which would divert from the creek water in excess of amount named and to permit water in excess of that amount to flow down to the dam of the plaintiff did not require the defendants to maintain works to deliver water to the plaintiff and the enforcement of the plaintiff's right to its continued flow does not constitute the imposition of a new right of way or easement upon the lands of the defendants.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 156; Dec. Dig. ☞152(11).]

Appeal from District Court, Reeves County; S. J. Isaacks, Judge.

Suit by J. C. Short against Otto Hoefs and others. From the judgment, the defendants appeal. Affirmed.

See, also, 178 S. W. 11.

Clay Cooke, of Pecos, for appellants. Ross & Hubbard, of Pecos, for appellee.

HIGGINS, J. This suit was brought by Short against appellants, Otto, Rudolph, Edwin, and Arthur Hoefs. The material allegations of plaintiff's petition are substantially as follows: That he is the owner of section 58 in block 13, Houston & Great Northern Railway Company survey, which is crossed by an intermittently flowing stream called Barilla creek, situated in the arid or semiarid region of the state, where irrigation is required to grow crops; that said creek is fed by rains falling within its watershed, which lies south of his land; that the creek flows in a well-defined channel, with well-defined banks and bed, to a point below and north of his land; that for many years there had been maintained a dam across the creek, known as the "U" dam, about two miles south of his land; that the residue of the water diverted by the dam for many years after its use for stock watering and irrigation has been permitted to flow back into the channel of the creek and has flowed to and across plaintiff's land; that the water so obstructed by the "U" dam and which flowed around the ends thereof and returned to the channel, in times of flood, aggregated much more than 100 cubic feet per second of time, and was ample to afford plaintiff the water to which he was entitled as well as to satisfy any superior legal rights which the defendants might have; that a permit had been legally issued by the board of water engineers to plaintiff permitting him to appropriate and divert 40 cubic feet of water per second for 24 days of 24 hours each annually from the flood or storm waters of the creek by means of a diversion dam located on his section for the purpose of irrigation; that plaintiff had begun and completed construction of his dam within the time required by law; that defendants own a section of land lying between plaintiff's land and the "U" dam, and are threatening to construct a dam on their land, together with a canal leading therefrom, which will result in diverting all the flood waters of the creek away from the channel of the creek and onto defendants' lands remote from the creek.

An injunction was asked restraining defendants from placing any dam or obstruction in the channel of the creek or any canal or ditch as an adjunct thereto in such manner as that same would divert and withhold from the plaintiff the water to which he was entitled by virtue of his appropriation.

Defendants pleaded that when they and their predecessors in title acquired their lands (describing same) the draw or depression known as Barilla draw did not exist thereon; that they were flat, or only slightly depressed, and they acquired their lands and the state parted with title thereto long before the draw washed out and before the Legislature attempted to reserve title to any waters flowing thereon, and there was no title in the state to any portion of said lands when plaintiff applied for his permit, and no title in the state to any waters flowing across said lands, and no easement or right of way therein by which plaintiff or the state could require defendants to run said waters across their lands, but the title was in defendants free and clear of any claim, reservation, easement, right of way, or any other right in the state; that the lands were owned in fee simple, and neither the state, the Legislature, nor the board of water engineers had the right to limit defendants in the enjoyment thereof, including the right to use the rainwaters falling upon and flowing across same; that the "U" dam was constructed in 1899 by the Wilson-Popham Cattle Company, and since that date all rainwaters reaching the depression had been held up and diverted; that all of said waters were actually appropriated and applied to beneficial uses by the said cattle company, and defendants long prior to the time plaintiff acquired his land from the state; that section 323, upon which is located the diversion dam complained of, was patented in 1874, and all of defendants' lands were patented and acquired by them long prior to the passage of any legislative act attempting to reserve or hold any rainwaters or other flowing waters, and as to such lands no such reservation had ever been or could be made; that at said times and long prior to the time alleged by plaintiff there was no draw or depression across defendants' lands, but all of the waters in the creek were held up, appropriated, and applied to beneficial uses at the "U" dam; that defendants have acquired from the Wilson-Popham Cattle Company a right to the use of the waters diverted at the "U" dam; that on January 24, 1914, defendants Otto Hoefs and said cattle company, being the joint owners of said diversion dam, filed their statement and plat in accordance with the act relating to the appropriation of waters proposing to appropriate at said point 100 cubic feet of water per second of

time; that Barilla draw is without water most of the year, and has no water flowing therein, except from rainfall, and none of the rainfall collects or is collected below the "U" dam. Defendants further deny that the plaintiff had procured any appropriation according to law, and deny that there were any unappropriated waters subject to appropriation, and that plaintiff has no right of way across defendants' lands to carry water.

The cause came on for trial, and judgment was entered as follows:

"That the defendants, Otto Hoefs, Rudolph Hoefs, Edwin Hoefs, and Arthur Hoefs, be, and they hereby are, perpetually enjoined from placing or maintaining any dam or obstruction in or across the channel of Barilla creek or draw, or any canal, levee, or ditch as an adjunct thereto or leading therefrom in manner or form as that such obstruction, dam, canal, levee, or ditch will divert from or away from said Barilla creek in excess of 100 cubic feet of water per second of time, unless and until such obstruction dam, canal, levee, or ditch be so constructed and maintained as that the same will permit to flow unimpeded in and into the channel of said Barilla creek and down to the dam of plaintiff, J. C. Short, such excess of water over and above said 100 cubic feet per second (if any) as may be flowing in said channel, or would flow into and therein if not obstructed or impeded by defendants, up to 40 cubic feet of water per second of time for 24 days of 24 hours each, annually, and not to exceed 1,920 acre-feet of water per annum."

From this judgment the defendants prosecute this appeal.

The facts material to a consideration of the questions presented by this appeal are as follows:

Barilla creek or draw rises in the Davis Mountains many miles south of the land described in the pleadings, and extends in a northerly direction. The area drained by the creek south of the "U" dam is about 350 square miles, or 225,000 acres. It only has water in it when it rains; all the water flowing therein being rainfall. After a big rain, it will run a day or two. A light rain runs immediately off. It usually runs from one to twenty-two times annually, on an average about five or six times. There is testimony that the creek had a well-defined channel extending 50 or 60 miles above (south) the "U" dam and a well-defined channel below such dam to and through plaintiff's land. The channel at sections 323 and 58 is 40 to 75 feet wide at the present time and 5 to 10 feet deep. There is testimony that in 1885 or thereabouts there was not a very well-defined channel at plaintiff's land; that there was very little channel, if any, then across defendant's section 323, but the same stopped at the Old Ft. Stockton road, below the "U" dam, and the water then spread out over the country. It has since washed out 75 to 100 feet wide. In 1887 what is now the draw below the Stockton road (above the Hoefs' dam) was covered with soil and grass, with the exception of an occasional small hole or washout. There was then no continuous defined channel there. The waters then would spread out over the country at least one-half mile in time of freshet. Section 323, belonging to defendants, was crossed by the draw; likewise section 58, belonging to plaintiff. Defendants constructed a diversion dam upon section 323. This is the dam complained of, and is situate some distance below (north) the "U" dam. Plaintiff's dam was upon section 58. Plaintiff acquired section 58 in 1911, and has some of it in cultivation. On June 10, 1914, the board of water engineers issued to him a permit to annually appropriate 40 cubic feet per second for 24 days of 24 hours to be diverted from said creek at the diversion dam on section 58. Defendant Otto Hoefs owned section 323, upon which he and his codefendant had constructed the dam complained of. Said section 323 was patented in 1874, and title by mesne conveyances passed to the defendants. The "U" dam was about a mile south of the defendants' dam on section 323. The "U" dam was constructed in 1899 by the Wilson-Popham Cattle Company, and had been diverting water since its construction. On January 24, 1914, Otto Hoefs and said cattle company filed in the county clerk's office a sworn statement of water appropriation from the draw at the "U" dam, proposing to appropriate at said point 100 cubic feet of water per second of time, and filed certified copy thereof in the office of the board of water engineers.

Plaintiff finished his dam in October, 1914, and the defendants built the dam complained of in February, 1915. Both dams washed out, and the plaintiff had commenced rebuilding his, and defendants were intending to rebuild theirs, which, being higher up on the draw, will prevent the water flowing to plaintiff's dam. When the water comes down the draw it covers a space sometimes as wide as 300 yards, depending on the size of the rains, spreading out over the lands.

It is feasible for Hoefs to construct and equip his dam so as to divert the 100 cubic feet of water as per his appropriation, and permit the excess, if there should be any, to flow on down to plaintiff's dam. The lands of the parties are in the arid or semiarid region of the state, and require irrigation to grow crops. Plaintiff has not acquired, by purchase or condemnation, any right of way or easement, to carry his 40 cubic feet of water across defendant's lands.

Appellants, in support of their assignments, complaining of the decree entered by the court, present three propositions of law, as follows:

"First. The act of the Legislature permitting the appropriation of waters belonging to the state of Texas, under which plaintiff claims the right to the injunction, by its express terms only permits the appropriation of the 'ordinary flow and underflow and tides of every flowing river or natural stream, of all lakes, bays or arms of the Gulf of Mexico, collections of still water, and of the storm, flood or rainwaters of every river or

natural stream, canyon, ravine, depression, or watershed, within the state of Texas, the title to which has not already passed from the state,' and, it appearing that the lands of defendants across which said rainwaters flow passed from the state of Texas in 1874 long prior to any attempted reservation of said waters, the right to said rainwaters was vested in defendants absolutely, and said act has no application thereto, nor could same be appropriated in the manner sought, it being incumbent on plaintiff to show that the title to said depression and the watershed thereof was in the state of Texas at the time of the passage of said act.

"Second. It appearing that the dam of defendants is constructed upon their own land, patented by the state of Texas in 1874, prior to the passage of the act of the Legislature attempting to reserve flood or storm waters in the state of Texas, and that said dam is not across any flowing stream to which riparian rights attach, the sole claim of plaintiff being based upon his permit granted by the board of water engineers to take 40 cubic feet of water per second from said draw at his dam under the provisions of said act of the Legislature, the defendants cannot be compelled to maintain works upon their land for the delivery of said water to the plaintiff, nor to grant plaintiff an easement or right of way across their land for the conduct of said water to his dam, nor abridged in their use of their own premises, as same would be the taking of private property for private use without compensation or the consent of the owner.

"Third. The proof showing conclusively that long prior to the passage of the act of the Legislature permitting the appropriation of public waters the title to the land of defendants had passed from the state of Texas, said act and the acts of plaintiff and the board of water engineers thereunder can have no application to said land, nor abridge the use and enjoyment thereof by defendants to the same extent as they might have used and enjoyed same prior to the passage of said act."

The appellee claims the right to an injunction in protection of his water appropriation made under the provisions of chapter 171, Laws Thirty-Third Legislature (Reg. Sess.), the first section of which reads:

"The unappropriated waters of the ordinary flow and underflow and tides of every flowing river or natural stream, of all lakes, bays or arms of the Gulf of Mexico, collections of still water, and of the storm, flood or rainwaters of every river or natural stream, canyon, ravine, depression or watershed, within the state of Texas, the title to which has not already passed from the state, are hereby declared to be the property of the state, and the right to the use thereof may be acquired by appropriation in the manner and for the uses and purposes hereinafter provided."

See article 4991, Vernon's Sayles' Civil Statutes 1914. This act by its terms relates to unappropriated waters, the title to which has not already passed from the state. It does not refer to the lands upon which such rivers, streams, canyons, ravines, depressions, and watersheds are situate.

No question is raised as to the manner and form of appellee's appropriation and that it was for, and is being applied to, a purpose provided by law, namely, irrigation. So it must be determined whether the water flowing in Barilla creek is to be considered as water the title to which had not passed from the state, so that it might be lawfully appropriated, and the right to its use acquired, by plaintiff. Appellants' first proposition rests upon the premise that the title to his lands passed from the state in 1874, which was long prior to any attempted reservation of the waters in Barilla creek flowing across the same, and thereby he became vested absolutely with the right and title to such waters as appurtenant to his lands, and that the appropriation act could have no application, and such waters could not be appropriated unless the state had title to Barilla creek and its watershed at the time of the passage of the act. We have found no authority in support of such a contention, and appellants have cited none. They refer to McGhee Irr. Ditch Co. v. Hudson, 85 Tex. 587, 22 S. W. 398, Barnett v. Matagorda, etc., 98 Tex. 355, 83 S. W. 801, 107 Am. St. Rep. 636, and Batla v. Goodell, 53 Tex. Civ. App. 178, 115 S. W. 622, but their pertinency is not apparent.

In McGhee, etc. v. Hudson, the court had under consideration the act authorizing the condemnation of land for irrigation purposes. The irrigation company was seeking to condemn so much land as was necessary for the construction of a dam across the Concho river and the opening of a ditch. The Concho river is a flowing stream to which riparian rights had attached, and it was held that section 2 of the act could not operate, and probably was not intended to operate, on the rights of riparian owners existing when the law was passed, but was intended to operate only on such interests as were in the state by reason of its ownership of lands bordering on rivers or natural streams; that land included everything attached to it, as trees, herbage, and water, and plaintiffs were entitled to have the water flow through their land in its accustomed channel, and to use it for all purposes for which a riparian owner may use water so flowing; that, if the irrigation company undertook to divert such water, they, in effect, took land, and could not do so without making compensation to the riparian owner for the water of which he was deprived by such diversion. In that case, however, the question of riparian rights upon a flowing stream was involved, which is not the case here. Appellants make no such claim, and in their second proposition affirm that their dam was not across any flowing stream to which riparian rights attached.

The other cases cited by appellants simply relate to questions of drainage rights arising out of the obstruction of the flow of surface waters. Under the common-law rule adopted in this state, such waters are regarded as a common enemy which the lower landowner may keep from coming from upper lands, and which either owner can get rid of as best he can, provided there is no artificial accumulation thereof discharged upon another's land. Those cases relate to drainage questions rather than of title to such waters. Appellants insist that the waters attempted

to be appropriated are mere surface waters flowing across their lands during times of rainfall, and their rights with respect thereto must be governed by the rules of law prior to the passage of the appropriation act, and such water is not subject to appropriation. It is stated by Mr. Weil in his work on Water Rights in the Western States (3d Ed. § 349) that diffused surface water cannot be appropriated against the landowner on whose land it lies; that its presence and movements are too capricious to found any right upon distinct from the land where it is gathered, and such water is owned by the owner of the land where it happens to lie. Mr. Weil in the section noted says further:

"The English cases have gone into this quite thoroughly. In Rawstrom v. Taylor it was held that, in the case of common surface water flowing in no definite channel, the landowner was entitled to get rid of it in any way he pleased, although he cut it off from plaintiff's mill which it had supplied. In Broadbent v. Ramsbotham it was decided that a landowner has a right to impound surface water which flows over his land in no definite channel, although the water is thereby prevented from reaching a brook the stream of which had for more than 50 years worked the plaintiff's mill. Baron Alderson, in delivering the judgment of the court in that case, says: 'No doubt, all the water falling from heaven, and shed upon the surface of a hill, at the foot of which a brook runs, must, by the natural force of gravity, find its way to the bottom, and so into the brook; but this does not prevent the owner of the land on which this water falls from dealing with it as he may please, and appropriating it. He cannot, it is true, do so if the water has arrived at and is flowing in some natural channel already formed. But he has a perfect right to appropriate it before it arrives at such channel.'

"All the many cases already cited considering whether there was or was not a water course held that, if there was not a water course, but only diffused surface water, neither the law of riparian rights nor the law of permanent rights by priority of appropriation applies."

Mr. Kinney (2 Kinney on Irrigation & Water Rights [2d Ed.] § 654) announces the same rule, quoting with approval King v. Chamberlin, 20 Idaho, 504, 118 Pac. 1099. In that case King had collected and impounded on his own land surface water which was not flowing in a well-defined channel. Chamberlin sought to appropriate the water under the water appropriation statutes of that state. It was held that:

"If a man collect and impound surface and flood waters from his own land before they reach any natural stream or channel and holds the same on his land and premises, the fact that he may not use it for irrigation or any other commercial purpose does not render it any less his property or authorize any one else to invade his property or appropriate and divert the same. A permit from the state engineer cannot give any sanction to such a procedure. The state engineer has no right to grant permits to one man to use another man's property."

In that case it will be noted that the landowner's absolute right to surface water flowing across his land was conditioned upon it being impounded before it reached a natural stream or channel. Diffused surface waters have been thus defined:

"Surface waters are waters of a casual and vagrant character, which ooze through the soil or diffuse or squander themselves over the surface, following no definite course. They are waters which, though customarily and naturally flowing in a known direction and course, have nevertheless no banks or channel in the soil, and include waters which are diffused over the surface of the ground, and are derived from rains and melting snows, occasional outbursts of water which in time of freshet or melting of snows descend from the mountains and inundate the country; and the moisture of wet, spongy, springy, or boggy ground." 24 Am. & Eng. Ency. Law (1 Ed.) 896.

40 Cyc. 639, defines surface waters to be: "Such as diffuse themselves over the surface of the ground, following no defined course or channel, and not gathering into or forming any more definite body of water than a mere bog or marsh."

See, also, 3 Farnham on Waters, § 978.

Barilla creek has all of the essential characteristics of a water course to which riparian rights would attach, except a permanent source of water supply. It has a channel, consisting of a bed and banks, but it is held without dissent that these characteristics alone will not constitute a water course in its legal sense to which riparian rights attach; that in addition there must be running water, which has a definite source of supply, and is permanent in the sense that similar conditions will always produce a flow of water and that these conditions recur with some degree of regularity, so that they establish and maintain for considerable periods of time a running stream; that ravines, gullies, canyons, sloughs, and swales through which mere surface water from rain or melting snow, at irregular periods, is discharged from a higher to a lower level, and which at other times are destitute of water, are not water courses in a legal sense to which riparian rights will attach. 1 Kinney on Irrigation & Water Rights (2d Ed.) §§ 301 to 315; Farnham on Waters, §§ 455, 455a, 457, and 459; 40 Cyc. 556; 30 Am. & Eng. Ency. Law (2d Ed.) 325; Hoyt v. Hudson, 27 Wis. 656, 9 Am. Rep. 473; Parke County v. Wagner, 138 Ind. 609, 38 N. E. 171; Sanguinetti v. Pock, 136 Cal. 466, 69 Pac. 98, 89 Am. St. Rep. 169; Los Angeles, etc., v. Los Angeles, 103 Cal. 461, 37 Pac. 375; Barkley v. Wilcox, 86 N. Y. 140, 40 Am. Rep. 519.

So it is apparent that the water which flows in Barilla creek is not mere diffused surface water as above defined and which may not be subject to appropriation. And, for reasons indicated, it is not water flowing in a water course to which riparian rights attach. But it is surface water which has collected from a very large area and is flowing in a well-defined channel, with a bank and bed. We see no reason why such water cannot be appropriated under our appropriation statute.

Mr. Weil says that diffused surface water cannot be appropriated against the owner of the land on which it lies because its presence and movements are too capricious to found

any right upon distinct from the land where it is gathered. But this objection does not apply to surface water which flows in a canyon, ravine, or depression, with a well-defined channel, and flows with sufficient regularity during the growing season to be of value for irrigation of agricultural products, as is the case with Barilla creek. We therefore hold that such water is subject to appropriation under the first section of chapter 171, Acts 33d Leg. (Reg. Sess.) if the title thereto has not heretofore passed from the state by appropriation or otherwise.

Of course, the title to this water was originally vested in the state. The title thereto has not passed to riparian owners of land upon the creek under the doctrine of riparian rights, because it is not a water course to which such rights would attach. No such contention is made.

There is no contention made that title has passed from the state by virtue of any prior appropriation, except the prior appropriation of 100 cubic feet of water per second of time claimed by Otto Hoefs and the Wilson-Popham Cattle Company by virtue of their statement filed January 24, 1914, and the decree protects this appropriation and subordinates appellees' appropriation to the same.

In the absence of a divestiture of its title under the doctrine of riparian rights or by virtue of legal appropriations, there is no reason why the water in Barilla creek should not be regarded as water "the title to which has not already passed from the state," and it is so held.

There is no reason why the water which falls upon the vast area of land in the watershed of the creek south of appellants' land should be in any wise regarded as belonging to appellants or in any wise appurtenant to their land so as to be considered as a part thereof. It does not fall upon their land, and assuredly appellants have no better title to such water than landowners further up the creek, and unless the accident of location be a controlling factor; they have no better title than landowner further down the creek. But whatever may be the relative rights of the parties to this litigation to the water, it has no bearing upon the question of whether the title thereto has heretofore passed from the state. Upon that phase of the case we conclude:

[1] 1. That it is not diffused surface water falling upon or flowing across appellants' land which possibly may be regarded as their absolute property, and not subject to appropriation. Whether or not such water is subject to appropriation it is not necessary to decide, and we express no opinion upon that question.

[2] 2. That the title thereto has not passed from the state by prior appropriation or under the doctrine of riparian rights.

[3] 3. This being true, the title to such water remains in the state, and is subject to appropriation under the laws of our state.

Under this view of the case, it is immaterial when the title to the lands in the creek's watershed passed from the state and when the state parted with its title to appellants' lands.

[4] Taking up appellants' second proposition, it is first asserted they cannot be compelled to maintain works upon their land for the delivery to plaintiff of water flowing in the creek. There is nothing in the court's decree requiring appellants to maintain any works to deliver water to appellee. Under the decree appellants are at liberty to demolish the dam which they have constructed upon section 323. An inspection of the decree will readily disclose that it imposes no duty to maintain any works upon their land. It simply undertakes to regulate and impose conditions upon the placing and maintenance of such works so that appellees' appropriation may be protected. Neither does it grant an easement or right of way across their land to conduct water to appellee's dam, nor unduly affect appellants in the use of their own property. Every man must use his own property with due regard for the rights of others. The water the flow of which was obstructed by appellant's dam was surface water flowing in a well-defined channel. It had flowed in that channel or depression across appellants' lands for many years, and the enforcement of the right to its continued flow does not constitute the imposition of a new right of way easement.

The right to flow in its accustomed channel, and to have it so flow, results necessarily from the rule which forbids the obstruction of water flowing in a well-defined channel. By his appropriation appellee became vested with a property right in a portion of the waters of Barilla creek, and the court properly protected that right by prohibiting the placing of such obstructions in the channel by an upper landowner as would result in diverting from the creek, water to which such upper landowner has no title, but which must pass in such channel across his premises before reaching appellee's point of diversion upon his own land.

What has been said disposes of the further contention made in the second proposition that the decree constitutes a taking of private property for private use.

From what has been said it follows that the third proposition is regarded as without merit.

The decree seems most adequately and properly to protect the rights of both parties to this litigation, and it is in all things affirmed.

HARPER, C. J. (concurring). Appellants accept in their motion for rehearing the statement of the nature and result of the case, and likewise the findings of facts in the majority opinion.

By the first assignment and its proposition it is urged that the state of Texas parted with its title to the land upon which their dam is situated in 1874, together with all the rights thereto in any wise appertaining including the depression now known as Barilla draw, and that the act of the Legislature (article 4991, R. S. 1913) declaring that "the ordinary flow, * * * collections of * * * rainwaters of every * * * ravine, depression or watershed * * * the title to which has not already passed from the state" has no application thereto, unless plaintiff shows that the title to the depression in question and the watershed thereof was in the state at the time of the passage of the act.

Therefore, they say, by their third assignment, the court erred in its decree in enjoining the construction and maintenance of the ·dam in question "unless it be so constructed as that it will permit all waters over 100 ·cubic feet, etc., to flow down to appellee," because, they further say, it places an unjust burden upon defendant, in that it compels them at great expense to construct for the benefit of plaintiffs an irrigation work for the delivery of water to the plaintiff and to maintain same, etc., and that the decree is an unjust and illegal interference with the use and enjoyment of private property and constitutes the taking of private property without compensation.

By their second they say that to comply with the provisions of this decree would require them to construct and maintain such expensive concrete dams as to render their property unprofitable; therefore they offer to permit plaintiff to construct such works as he may see fit at his own expense upon their property, so as to permit the excess over and above the amount apportioned to them, 100 cubic feet, etc., to flow down to his (plaintiff's) property.

If I comprehend the contentions of the appellants, they are that: (a) The uncontradicted facts establish, first, that the waters sought to be appropriated by the parties to this suit are surface waters; (b) that, being surface waters, they have the right to use their premises as they may see fit to impel or impound them and without regard to the location of appellee's premises, i. e., that appellee has no right to have the waters flow across their premises down to him; (c) and that being surface waters, not owned by the state, because not having fallen upon state lands, the act the provisions of which are sought to be invoked by appellee has no application.

If these are surface waters as contended for by appellant, his propositions are correct, but I concur in the holding of the majority of this court that, "under the facts, they are not surface waters in the true meaning of the term"; therefore the rule of the common law "that an owner in the ordinary use of his property may divert them" does not apply. Batla v. Goodell, 53 Tex. Civ. App. 178, 115 S. W. 622. But they are waters which have fallen upon a large area of country, not claimed by appellant, and afterwards by virtue of the natural drainage of the country, come together or accumulate, from time to time in a canyon, ravine, or depression, with a well-defined channel, and flow with sufficient regularity during the crop season to be of value for irrigation. Therefore the waters therein become subject to ownership or appropriation by those who may own irrigable lands adjacent thereto, in the proportion that the relative rights of the parties may obtain, and as to such rights, i. e., as to the equitable distribution to persons entitled thereto, the law must and does furnish the rules by which they may be obtained.

Under the statement of facts in this case there is no evidence that the state owns (by any means known to the law) the lands upon which these waters fall nor the depression through which they flow; consequently there is no ownership in the state of the water flowing thereon. Therefore the statute invoked does not apply, unless said statute was intended to and does fix a new and definite rule, in the place of the common-law rule, for the distribution of the waters of this and similar natural water courses. And I see nothing in this statute, which by its provisions, by strict construction, or, by necessary intendment, indicates that it was intended to give a new rule applicable to the distribution of such waters; and, since there is no proof that it, the state, owned the waters by any of the means known to the law, I conclude that the rule of common law adopted in Fleming v. Davis, 37 Tex. 173, is the rule by which we must determine the relative rights of the parties to this litigation. The property of appellee being below that of appellant, and it appearing that he (appellee) is entitled to water for irrigation from Barilla creek, and appellants having admitted that appellee is entitled to water, first, by applying for a permit from the state, and, by their second assignment, agreeing that they may have it, etc., I conclude that the judgment entered meets the equities in this case, because appellants must so use their premises as not to injure the property rights of appellee. And if they must construct a dam in order to convert the water due them from the usual flow of this depression, they must so construct it as not to take waters to which appellee ·is entitled. And, since there is no question raised as to the distribution made by the state being equitable, appellee is entitled to his injunction, whether the rule as enunciated in the statute or the common-law rule applies.

I therefore concur in the final conclusion or result of the majority opinion, but not in the reasoning upon which it is based.