Reversed and Remanded; Rehearing Overruled; Corrected Majority Opinion
on Rehearing After Remand of April 29, 2004 Withdrawn and Substituted with
Corrected Majority Opinion on Rehearing After Remand filed July 1, 2004









Reversed and Remanded; Rehearing Overruled; Corrected
Majority Opinion on Rehearing After Remand of April 29, 2004 Withdrawn and
Substituted with Corrected Majority Opinion on Rehearing After Remand filed
July 1, 2004.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-99-00811-CR

____________

 

JOHN WATTS, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the County
Criminal Court at Law No. 15

Harris County, Texas

Trial Court Cause No. 99-08037

 



 

CORRECTED   MAJORITY  
OPINION

ON  
REHEARING   AFTER   REMAND








Appellant, John Watts, was charged by
information with two counts of water pollution. 
A jury subsequently returned a general verdict of guilty.  On original submission, we affirmed the
convictions.  Watts v. State, 56
S.W.3d 694 (Tex. App.CHouston [14th Dist.] 2001), rev=d, 99 S.W.3d 604
(Tex. Crim. App. 2003).  A central issue
in the trial of that case was whether a drainage ditch constituted Awater in the
state,@ and, thus, was
protected from pollution by the Texas Water Code.  See Tex.
Water Code Ann. ' 7.145 (Vernon 2000).  Relying upon the authority of American
Plant Food Corp. v. State, 587 S.W.2d 679 (Tex. Crim. App. 1979), the trial
court instructed the jury that a Adrainage ditch was
one of the types of surface water the legislature sought to protect under the
Water Code Act.@  We
approved the trial court=s instruction.

The Texas Court of Criminal Appeals,
however, held the instruction was improper. 
The court reasoned the trial judge erred by (1) taking judicial notice
of the law in the jury=s presence and (2) commenting on the
weight of the evidence.  Watts v.
State, 99 S.W.3d 604, 611B13 (Tex. Crim.
App. 2003).  The court then remanded the
cause to this court to conduct a harm analysis.

Standard of
Review

The essence of the error here is that by
improperly taking judicial notice that a drainage ditch is Awater in the
state,@ the trial court
thereby commented on the weight of the evidence.  A trial court improperly comments on the
weight of the evidence if it makes a statement that implies approval of the
State=s argument, that
indicates any disbelief in the defense=s position, or
that diminishes the credibility of the defense=s approach to its
case.  Hoang v. State, 997 S.W.2d
678, 681 (Tex. App.CTexarkana 1999, no pet.).  Here, one of the contested issues before the
jury was whether a drainage ditch, in which water flowed only intermittently,
was Awater in the
state.@








Although the trial court did not require
the jury to find the drainage ditch was protected by the Texas Water Code, it
did authorize the jury to accept this matter as a conclusive fact.  Because appellant may have been deprived of
his right to have a jury determine this issue, we will review the error under
the standard for Aconstitutional error.@  See Tex.
R. App. P. 44.2(a).[1]  Where the appellate record in a criminal case
reveals constitutional error, we must reverse the judgment of conviction unless
we determine beyond a reasonable doubt that the error did not contribute to the
conviction.  Id.

Harm Analysis

To the jury, the
language and conduct of the trial court have a special and peculiar
weight.  Devis v. State, 18 S.W.3d
777, 782 (Tex. App.CSan Antonio 2000, no pet.).  In fact, jurors are prone to seize with
alacrity upon any conduct or language of the trial judge which they may
interpret as shedding light upon his or her view of the weight of the evidence,
or the merits of the issues involved.  Bachus
v. State, 803 S.W.2d 402, 405 (Tex. App.CDallas 1991, pet.
ref=d).  Thus, in reviewing the possible prejudice to
appellant, we will presume the jury accepted the trial court=s invitation to
find as a conclusive fact that a drainage ditch is Awater in the
state.@

Appellant was charged by information.  The information appears to contain two
paragraphs.  Although they are not styled
as such, these Aparagraphs@ are, in fact,
separate counts because each alleges a different offense.








The first count purports to allege an
offense under Section 7.145(a) of the Texas Water Code.  Tex.
Water Code Ann. ' 7.145(a) (Vernon 2000).  The second count alleges an offense under
Section 7.146(a) of the Texas Water Code. 
Tex. Water Code Ann. ' 7.146(a) (Vernon
2000).  Each offense Arequires proof of
a fact which the other does not.@  See Blockburger v. United States, 284
U.S. 299, 304 (1932) (setting forth the test for distinguishing between the
same or different offenses).  In
reviewing the statutory elements applicable to the facts of this case, a person
is strictly liable under Section 7.145 and commits an offense if he: (1)
intentionally or knowingly, (2) discharges or allows the discharge, (2) of a
waste or pollutant, (3) into or adjacent to 
Awater in the
state,@ (4) that causes
or threatens to cause water pollution, and (5) such discharge is not in strict
compliance with all required permits or with a valid and currently effective
order issued or rule adopted by the appropriate regulatory agency.  A person commits an offense under Section
7.146 if he: (a) intentionally or knowingly, (2) discharges or allows the
discharge, (3) of a waste or pollutant, (4) from a point source, (5) in
violation of Chapter 26 of the Texas Water Code, i.e., discharges sewage
into or adjacent to any Awater in the state.@

When multiple offenses are committed
during a single criminal episode, they may be joined in a single charging
instrument with each offense alleged in a separate count.  Tex.
Code Crim. Proc. Ann. art. 21.24(a) (Vernon 1989).  Because a statute sometimes provides for
various manner and means of committing an offense, each count may contain as
many separate paragraphs charging alternate manner and means of committing the
offense as necessary.  Tex. Code Crim. Proc. Ann. art.
21.24(b) (Vernon 1989).  Thus, as a
general rule, a Acount@ is used to charge
the offense itself and a Aparagraph@ is that portion
of a count which alleges the method of committing the offense.  Owens v. State, 96 S.W.3d 668, 673 (Tex.
App.CAustin 2003, no pet.).








It is permissible to join two or more
offenses in the same charging instrument, and the State is not required to
elect between counts.  Thacker v.
State, 999 S.W.2d 56, 63 (Tex. App.CHouston
[14th Dist.]
1999, pet. ref=d). 
The jury, however, must be instructed to return a finding of guilty or
not guilty in a separate verdict as to each count submitted to them.  Tex.
Code Crim. Proc. Ann. art. 37.07, ' 1(c) (Vernon
1981).  Here, the counts were not
separately submitted to the jury; 
rather, the jury returned a single verdict which declared:  AWe, the Jury, find
the Defendant >Guilty.=@  Appellant did not object to the charge and
has not raised the error on appeal. 
Under these circumstances, the general verdict operates as a conviction
of all counts.  Lovejoy v. State,
48 S.W.
520, 522 (Tex. Crim. App. 1898). 
Moreover, if necessary, we are free to assign the verdict to any count
supported by the evidence.  Smothermon
v. State, 383 S.W.2d 929, 931 (Tex. Crim. App. 1964).  Thus, while the trial court=s instruction
regarding the drainage ditch had direct applicability only to the first count
of the information (which was the only count alleging a drainage ditch to be Awater in the state@), we must examine
the effect of the charge upon the general verdict.

The first count alleges appellant
discharged sewage into or Aadjacent@ to a drainage
ditch.  Although the State offered some
evidence that appellant=s sewage could potentially contaminate the
drainage ditch if there was sufficient rainfall to carry it into the ditch, the
State=s primary theory
of prosecution appears to have been that appellant unlawfully discharged sewage
Aadjacent@ to the drainage
ditch.  The record, for example, shows
the discharge of sewage was 140 to 150 feet from the county drainage
ditch.  A small trench had been constructed
on appellant=s property to facilitate drainage directly
into the county drainage ditch.  However,
due to the distance between the discharge and the ditch, no sewage was observed
draining into the ditch.  In fact, it was
conceded by the State=s witnesses that during hot, dry weather,
the sewage did not contaminate the ditch.[2]  However, the State also presented testimony
that even a Alittle@ rain could
potentially wash sewage from appellant=s property into
the ditch.  From there, the polluted water
could enter Coal Creek, which, in turn, emptied into White Oak Bayou, which, in
turn, eventually emptied into Buffalo Bayou and Galveston Bay.  Finally, appellant, himself, testified that surface water
runoff from his property flowed into the ditch.








However, even if the jurors were permitted to convict
appellant under the first count for discharging sewage adjacent to the
drainage ditch, no conviction was possible unless they also found the ditch to
be Awater in the state.@ 
Historically,
the term Awater@ has been used in
many different contexts in Texas jurisprudence. 
Distinctions have been drawn between navigable and non-navigable waters,[3]
surface and underground waters,[4]
waters in a natural watercourse and those that are diffused on the surface.[5]  Many of these distinctions were recognized by
courts while either attempting to adjudicate ownership of water or determining
riparian rights regarding its use.  It
was well established early in the twentieth century that waters which Aooze through the
soil@ (percolating
ground water) and waters which Adiffuse or
squander themselves over the surface, following no definite course@ (diffused surface
water) belong to the owner of the land.  Hoefs
v. Short, 190 S.W. 802, 806 (Tex. 1916). 
Water in a watercourse, however, is the property of the State, held in
trust for the public.  Domel v. City
of Georgetown, 6 S.W.3d 349, 362 (Tex. App.CAustin 1999, pet.
denied).  Diffused surface water
(belonging to the land owner) becomes a natural watercourse (belonging to the
State) at the point where it begins to form a reasonably well-defined channel,
with bed and banks, or sides and current, although the stream itself may be
very small and the water may not flow continuously. International-Great N.
R.R. Co. v. Reagan, 12 Tex. 233, 49 S.W.2d 414, 418B19 (1932).  However, if the land owner can capture or
impound Acasual and vagrant@ waters before
they coalesce into a natural gully, stream, or other watercourse, they remain
his property.  Hoefs, 190 S.W. at
806.

With respect to pollution, however, the legislature clearly
sought to abolish these common law distinctions between private and public
waters.  It is an offense to pollute any
Awater in the
state.@  Tex.
Water Code Ann. '' 7.145(a) & 26.121(a)(1) (Vernon
2000).  AWater in the state@ is defined as:








. . . groundwater, percolating or otherwise, lakes, bays,
ponds, impounding reservoirs, springs, rivers, streams, creeks, estuaries,
wetlands, marshes, inlets, canals, the Gulf of Mexico, inside the territorial
limits of the state, and all other bodies of surface water, natural or
artificial, inland or coastal, fresh or salt, navigable or nonnavigable, and
including the beds and banks of all watercourses and bodies of surface water,
that are wholly or partially inside or bordering the state or inside the
jurisdiction of the state.

Tex. Water Code Ann. ' 26.001(5) (Vernon
Supp. 2004).  By this broad definition
the legislature has clearly sought to include all water found within the
environmentCwhether impounded or free-flowing, above
or beneath the surface of the ground, in or out of a watercourse, salt or
fresh, or publicly or privately owned. 
In short, under the definition provided by the legislature, it is
difficult to envision any liquid water in the environment, apart from
free-falling rain drops, that is not Awater in the
state.@

However, as the Court of Criminal Appeals
specifically observed, the trial court did not instruct the jury that water
in a drainage ditch is Awater in the state,@ but rather that
the ditch itself is Awater in the state.@  Appellant contends that such an instruction
is nonsensical, but we are persuaded the trial judge=s instruction, although
inappropriate, was entirely accurate. 
The definition of Awater in the state@ includes not only
liquid water, but the beds and banks of all watercourses.  The term Awatercourse@ is not defined by
the Water Code; thus, it must be given the meaning it enjoys in ordinary
usage.  A Awatercourse@ is any Abody of water
flowing in a reasonably definite channel with bed and banks.@  Black=s Law Dictionary
1585
(7th ed. 1999).  It may be
either artificial, i.e., man-made, or natural.  Id. at 1586.  Here, the legislature has included in its
definition of Awater in the state@ the beds and
banks of all watercourses (as distinguished from merely natural
watercourses).  Compare and contrast
Tex. Water Code Ann. ' 26.001(5)
(specifying Aall watercourses) with Tex. Water Code Ann. ' 36.001(8)(E)
(Vernon Supp. 2004) (specifying only Anatural
watercourses@) and Tex. Loc. Gov=t Code Ann. ' 402.044(3) (Vernon Supp. 2004)
(specifying Anatural or artificial watercourses@).








 Moreover, the fact that a watercourse contains
water only intermittently does not alter its character as a watercourse.  The current of water in a watercourse need
not be continuous and the watercourse may be dry for long periods of time.  Hoefs v. Short, 273 S.W. 785, 787 (Tex.
1925); Domel, 6 S.W.3d at 362.  
Accordingly, a drainage ditch retains its character as a Awatercourse@ during flood or
drought, whether wet or dry.  Because the
bed of a watercourse may be polluted without regard to whether it currently
contains liquid water, the trial court=s instruction was
a correct statement of the law.

However, in light of the Court of Criminal
Appeal=s opinion, it
appears the trial court=s error was not so much in giving the jury
an incorrect statement of the law, as it was in giving any
statement identifying or defining Awater in the state@ by means other
than the statutory definition propounded by the legislature.  Thus, the main thrust of the court=s opinion seems to
be the notion that a trial court should not instruct the jury with regard to Ajudicial decisions
or any statements that an appellate court has held that proof of >X= fact fulfills >Y= legal
requirement.@  Watts,
99 S.W.3d at 611.  Therefore,
notwithstanding the accuracy of the trial court=s instruction, it
should not have been given to the jury. 
Thus, we must now decide whether an instruction, although accurate in
its content, can nevertheless be harmful to the defendant.








In his closing argument to the jury,
appellant=s counsel attempted to persuade jurors
that a drainage ditch was not Awater in the state@ because the words
Adrainage ditch@ do not appear in
the statutory definition of Awater in the
state.@[6]  Counsel=s argument had no
legal merit, but statutes are not always drafted so as to Aexclude every
misinterpretation capable of occurring to intelligence fired with a desire to
pervert.@  See Paraiso v. United States, 207 U.S.
368, 372 (1907).  While we are persuaded
that a drainage ditch is, as a matter of law, Awater in the
state,@ we also recognize
that without the benefit of the trial court=s instruction, it
is conceivable appellant=s counsel might have induced the jury to
believe otherwise.  Accordingly, we
cannot say beyond a reasonable doubt that the trial court=s instruction did
not contribute to appellant=s conviction under
the first count of the information.








With respect to the second count, the
State did not allege a drainage ditch, i.e., it did not identify the Awater in the state.@ 
Thus, the jury was authorized to convict appellant under the second
count if it found he discharged sewage from a point source into or adjacent to
any Awater in the state.@[7] 
The evidence indicates several watercourses were nearby and subject to
pollution by appellant=s sewage if sufficient rainfall carried it into the ditch,
and hence to Coal Creek, White Oak Bayou, Buffalo Bayou, etc.  However, the State=s theory of prosecution, as evidenced
by the record, was that an offense was committed when the appellant dumped
sewage adjacent to the drainage ditch and, thus, adjacent to Awater in the state.@ 
Accordingly, the second count fairs no better than the firstCappellant was potentially prejudiced
by the trial court=s instruction.  While
it is unseemly to predicate reversible error upon an accurate statement of the
law, the Court of Criminal Appeals clearly suggests by its opinion that an
appellant may be harmed by such an instruction.

Because we cannot find beyond a reasonable doubt that the
instruction did not contribute to the conviction, the judgment of the trial
court is reversed and the cause is remanded for a new trial.

 

 

/s/      J. Harvey Hudson

Justice

 

 

Judgment
rendered and Corrected Majority and Concurring Opinions on Rehearing after
Remand filed July 1, 2004.

Panel consists
of Justices Yates, Hudson, and Frost (Frost, J., concurring).

Publish C Tex.
R. App. P. 47.2(b).

 











[1]  We do not mean
to suggest that every comment on the weight of the evidence constitutes Aconstitutional error.@  A Aconstitutional
error@ is an error that directly offends the United States
Constitution or the Texas Constitution without regard to any statute or rule
that might also apply.  Alford v.
State, 22 S.W.3d 669, 673 (Tex. App.CFort
Worth 2000, no pet.).  Whether a comment
on the weight of the evidence constitutes Aconstitutional
error@ depends upon the context in which it is made.  For example, where an inadvertent comment is
made by the trial judge in the presence of the jury that could be interpreted
to suggest the trial judge holds an opinion as to some factual issue in the
case, the error may prejudice the defendant, but it would not necessarily have
the effect of deciding the issue or removing it from the jury=s consideration. 
However, if the comment is improperly inserted in the court=s charge, it may remove some element or fact issue
from the jury=s consideration and thereby deprive the defendant of a
jury trial on the disputed element or fact issue.  Only in the later case would the erroneous
comment constitute constitutional error.





[2]  The record
also contains expert testimony that the polluting effect of sewage, discharged
on the ground, dissipates over a period of 48 hours due to bacterial
activity.  Again, therefore, the only
danger of polluting state water occurred during times of rainfall when the
runoff carried fresh sewage into the drainage ditch.





[3]  Navigable
streams, for example, are held by the State in trust for the benefit of the
public.  Guadalupe-Blanco River Auth.
v. Pitonyak, 84 S.W.3d 326, 340 (Tex. App.CCorpus
Christi 2002, no pet.).  In fact, the
State holds title to all navigable riverbeds. 
Brainard v. State, 12 S.W.3d 6, 31 n.3 (Tex. 1999).





[4]  The
distinction between surface and underground water is important in determining
ownership of the water.  Texas courts
have also long considered water as part of the soil itself, and ownership of
underground water has historically come with ownership of the surface.  Dyegard Land Partnership v. Hoover, 39
S.W.3d 300, 311 (Tex. App.CFort Worth 2001, no pet.)





[5]  Damages
stemming from the diversion of water are sometimes determined by whether the
water at issue was diffused surface water or water in a natural water
course.  Dalon v. City of DeSoto,
852 S.W.2d 530, 538B39 (Tex. App.CDallas
1992, writ denied).





[6]  This is the
same argument advanced in the concurring opinion.  Justice Frost, for example, relies heavily
upon the fact that the word Aditch@ is used by the Legislature in describing a Apoint source,@ but is
not used in defining a Awater in the state.@  Because the Legislature has used the word Aditch@ in other statutes, but has failed to use it in
defining a Awater in the state,@ the
concurring opinion suggests this is some evidence the Legislature did not
intend for ditches to be watercourses.

In defining a Apoint source,@ the Legislature
attempted merely to describe every conceivable place or device through which
pollution might be discharged into water. 
Thus, a Apoint source@ is Aany discernible, confined and discrete conveyance . .
. from which pollutants or wastes are or may be discharged into or adjacent to
any water in the state.@  Tex. Water Code Ann. ' 26.001(21) (Vernon Supp. 2004).  Examples provided by the Legislature include
pipes, ditches, channels, tunnels, conduits, wells, discrete fissures,
containers, rolling stock, animal feeding operations, vessels, etc.  Id. 
The inclusion of ditches as possible point sources in no way, however,
implies that ditches are not also watercourses.

A Adrain,@ for example, may sometimes be a Aditch.@  See Lee v.
Grupe, 223 S.W.2d 548, 552 (Tex. Civ. App.CTexarkana
1949, no writ) (holding that Adrain@ is synonymous with Aditch@); Black=s Law Dictionary 509 (7th ed. 1999) (stating that a drain
is a Aconduit for draining liquid, as a ditch or pipe.@);  Webster=s Third New International
Dictionary 685 (1993) (defining Adrain@ as Aan artificial channel by means of which liquid or
other matter is drained or carried off: SEWER, SINK, TRENCH . . . a watercourse
esp. when narrow@).  As Aan artificial conduit or channel designed to carry off
water, sewage, filth, refuse, etc.@ a Adrain@ fits the definition of a Apoint source.@  See Peterson v. Barron, 401 S.W.2d
680, 686 (Tex. Civ. App.CDallas 
1966).  Yet, a Adrain@ may also be a watercourse.  Id.   


A ditch is simply Aan artificial stream.@  Lewis v. San Antonio River Authority,
343 S.W.2d 475, 482 (Tex. Civ. App.CSan
Antonio 1960), aff=d, 363
S.W.2d 444 (Tex. 1962).  As such, a ditch
is an artificial watercourse to which, under certain circumstances, even
riparian rights may attach.  Id.
at 482B83.  Thus, the
term Awatercourse@ is
broad enough to include Aartificial watercourses, whether employed for traffic,
for irrigation, or for drainage.@  Chicago, R.I. & G. Ry. Co. v. Tarrant
County Water Control & Improvement Dist. No. 1, 73 S.W.2d 55, 70 (Tex.
1934).  Accordingly, a dredged channel is
a Aman-made watercourse.@  See Selkirk Island Corp. v. Standley,
683 S.W.2d 793, 794 (Tex. App.CCorpus Christi 1984, writ ref=d n.r.e.) (holding that where Colorado River runs
through a dredged channel it remains a watercourse even if man-made).

Justice Frost also contends a watercourse
must, by definition, contain water.  The
argument, while cogent, ignores decades of contrary jurisprudence.  A watercourse may, in normal times, contain
very little, if any, water.  Lower
Colorado River Authority v. Texas Dept. of Water Resources, 638 S.W.2d 557,
581 (Tex. App.CAustin 1982), rev=d on other grounds, 689 S.W.2d 873 (Tex. 1984). 
The only prerequisite for a watercourse is that it have a reasonably
well defined channel, with bed and banks, or sides and current, although the
stream itself may be very small and the water may not flow continuously.  International-Great Norther R. Co., 49
S.W.2d at 418.  Thus, the Leon River is a
watercourse even if it does not flow for six or eight months at a time.  Texas Co. v. Burkett, 296 S.W. 273,
275‑76 (Tex. 1927).  Likewise,
Barilla Creek, a dry bed in Pecos County that contains water four to seven
times annually for a short time after a rainfall, is, nevertheless, a
watercourse.  See State Bd. of Water
Engineers v. Slaughter, 382 S.W.2d 111, 113 (Tex. Civ. App.CSan Antonio 1964, writ ref=d n.r.e.).  Even
when water is so intermittent and of such minimal quantity as to eliminate the
watercourse as a potential source of irrigation, and thus free of riparian
rights, it remains a watercourse.  See
McCurdy v. Morgan, 265 S.W.2d 269, 
271 (Tex. Civ. App.CSan Antonio 1954, writ ref=d). 
Accordingly, Chiltipin Creek, a dry creek in San Patricio County that
never contains water except during periods of heavy rain is still a
watercourse.  Id.

If the concurring opinion is correct, a
person could dump noxious substances into a dry streambed or ditch without
violating the statutes at issue even if the bed was shown to have water in it
the day before and the day after the dumping of the pollution.  Surely, the Legislature did not intend a
construction so at odds with public policy.





[7]  AAdjacent@ is not
defined by the Water Code.  In common
usage, the term means Anot distant or far off,@ it was Anearby but not touching.@  Webster=s Third New International
Dictionary 26 (1993).