**McCURDY et al. v. MORGAN et. al.**

No. 12626.

Court of Civil Appeals of Texas.

San Antonio.

Feb. 3, 1954.

Rehearing Denied March 3, 1954.

See, also, Tex.Civ.App., 252 S.W.2d 264.

Black & Stayton, John Ben Shepperd, Jesse P. Luton, Jr., Alvis Vandygriff, J. Arthur Sandlin, Austin, for appellants.

Graves, Dougherty & Greenhill, Austin, Kleberg, Mobley, Lockett & Weil, David M. Coover, Corpus Christi, W. B. Moss, Sinton, for appellees.

NORVELL, Justice.

■ This case concerns a dispute of title between the successors of John Pollan, who in 1834 received a grant embracing within its limits a portion of the bed of a non-perennial stream (Chiltipin Creek) from the executive authority of the Mexican State of Coahuila and Texas, and those claiming under an oil and gas lease (covering the creek bed) executed in 1951 by the Land Commissioner of the State of Texas. The controlling question is whether title to the bed of the non-perennial stream remained in the sovereign or passed to the grantee under the Mexican grant. As to perennial streams, it is well settled that under the applicable Mexican civil law, title to the bed remained in the sovereign. Heard v. Town of Refugio, 129 Tex. 349, 103 S.W. 2d 728.

The appeal is from a summary judgment holding that a certain oil and gas lease (sometimes referred to as the "Chiltipin Creek Lease,") dated December 13, 1951, executed by the Land Commissioner to Alvis Vandygriff, was null and void. The reasons for the holding are set forth in the face of the judgment and we quote therefrom:

"That on the 30th day of October, 1834, under the then applicable laws of the State of Coahuila and Texas and of the Republic of Mexico there was granted and issued by the State of Coahuila and Texas to John Pollan as a colonist in the colony of Power and Hewitson title to one league of land situated in the present county of San Patricio County, Texas;

"That said grant to John Pollan is an outstanding, valid, effective and un-

cancelled grant recognized by the State of Texas and is a muniment of title in the General Land Office of Texas. That the land included in the said John Pollan Grant lies across Chiltipin Creek, and the said Grant has been outstanding for a period of more than 10 years and has not been cancelled or forfeited.

"That portion of Chiltipin Creek purported to be covered by the 'Chiltipin Creek Lease' lies within the boundaries of the Grant of October 30, 1834, to John Pollan, and the fee simple title to the land in the said portion of the creek passed from the sovereign at the time of the grant to John Pollan, within and under such grant, and prior to the acquisition of the sovereignty over the general area by the Republic of Texas and the State of Texas, and because thereof the said portion of Chiltipin Creek did not at the time of the execution and delivery of said lease on December 13, 1951, and does not now, belong to the State of Texas."

In our opinion, the affidavits attached to the motion for summary judgment show conclusively that the bed of the stream covered by the "Chiltipin Creek Lease" lies within the boundaries of the John Pollan Grant and that Chiltipin Creek is a non-perennial stream.

In Manry v. Robison, 122 Tex. 213, 56 S. W.2d 438, 446, it was said that:

"The status of the law in Texas when we adopted the common law as the rule of decision in 1840 was as follows: Texas owned the beds of all *perennial streams, regardless of navigability,* whether grants of land adjacent were made by Spain and Mexico prior to March 2, 1836, or by the Republic of Texas prior to the act of 1837, *by virtue of the civil law of Mexico.* Hall's Mexican Laws, §§ 1390, 1406; Angell on Watercourses (6th Ed.) § 550; State v. Grubstake Investment Association, 117 Tex. 53, 297 S.W. 202, and authorities there cited. The Republic also owned the beds of all streams touching grants made subsequent to that date and prior to the act of 1840, *whether perennial or not,* where the beds were as wide as 30 feet, under the Mexican civil law as modified by the act of 1837."

From this excerpt it may reasonably be inferred that the Mexican civil law doctrine of sovereign ownership of the beds of watercourses, related only to perennial streams and that the notion of navigability and the arbitrary definition of a stream having a thirty-foot bed as a navigable watercourse, represented a modification of the Mexican civil law effected by the Act of 1837. Motl v. Boyd, 116 Tex. 82, 109, 286 S.W. 458, 468; State v. Grubstake Inv. Ass'n, 117 Tex. 53, 56, 297 S.W. 202; Heard v. Town of Refugio, 129 Tex. 349, 358, 103 S.W.2d 728, 733. The John Pollan Grant having been made in 1834 by the executive authority of the State of Coahuila and Texas, and Chiltipin Creek being a non-perennial stream, it would seem to follow that the bed of the creek vested in the grantee.

Appellants, however, contend that the Mexican civil law relating to sovereign ownership of stream beds is obscure as to the distinction between perennial and non-perennial streams, and that as a consequence particular attention must be centered upon local Mexican law and policy as it existed in Coahuila and Texas in 1834. Special emphasis is placed upon Art. 29 of Decree No. 190, dated April 28, 1832 (1 Gammel's Laws 299) and Art. 22 of Decree No. 272, dated March 26, 1934, (1 Gammel's Laws 357), adopted by the Congress of Coahuila and Texas. These articles read as follows:

"Art. 29 (190). The survey of vacant lands that shall be made upon the borders of any river, running rivulet or creek, or lake, shall not exceed one-fourth of the depth of the land granted, should the land permit. (In the above translation, 'arroyo de agua corriente' is translated as 'running rivulet or

creek'—the word 'creek' being regarded as essentially synonymous with running rivulet.)

"Art. 22 (270). Lands fronting on permanent creeks (arroyos permanentes), rivers, large lakes, bays and the seashore, shall run back double the extent of their front."

Appellants argue that "the law and policy of Spain and Mexico under which title to stream beds was held by the sovereign in trust for the people were not grounded upon the usefulness of streams for purposes of navigation, * * * (but) it is most probable that Spanish and Mexican law pertaining to the ownership of the beds of streams had its basis in the usefulness of water for the purposes of irrigation." At times, Chiltipin Creek carries water within defined banks which could be utilized for irrigation, and therefore it should be held that title to the creek bed vested in the sovereign. As supporting this argument, appellants cite the case of Hoefs v. Short, 114 Tex. 501, 273 S.W. 785, 40 A.L.R. 833, which held that Baretta Creek, a non-perennial stream, met all the requirements of a natural watercourse and that riparian rights attached thereto. The case does not, however, involve the construction of a Mexican grant.

■ It seems that under the basic Mexican civil law the doctrine of sovereign ownership to the beds of streams applied only to perennial streams. Juan Sala, Sala Mexicano, 3d Ed. (1883), T. II, p. 12, Hall's Mexican Laws (1885), p. 417, § 1406, "Margo & Balena, Elucidationes ad quantor libros Institutionum Im. Justiniane * * * novissimaque Resolutiones non dium compilatas Collectionibus legum Castellae nec Indianum," T. 2, p. 13. A marked distinction is noted between perennial streams, which never or very rarely completely dry up in summer, and "torrents," which run only during periods of heavy rainfall.

In our opinion, Art. 29 of Decree No. 190, and Art. 22 of Decree No. 270, are properly construed as having application to perennial streams and not to dry creek beds or "torrents." This construction seems in accordance with the basic civil law conceptions then in force, and the words used are hardly appropriate to effect the departure in public policy suggested by appellants so as to provide for sovereign ownership of the beds of non-perennial watercourses. This view is strengthened by reading the Texas Supreme Court decisions relating to the Mexican civil law doctrine of sovereign ownership of river or creek beds which refer to *perennial streams,* an expression which undoubtedly has some significance in the civil law or it would not be repeatedly used. Motl v. Boyd, 116 Tex. 82, 286 S.W. 458; State v. Grubstake Investment Association, 117 Tex. 53, 297 S.W. 202; Manry v. Robison, 122 Tex. 213, 56 S.W.2d 438; Heard v. Town of Refugio, 129 Tex. 349, 103 S.W.2d 728. For example, we find this expression in Manry v. Robison [56 S.W.2d 447], "The civil law, therefore, which retained title to the beds of all *perennial streams* in the state, so that the impounding and distribution of waters might be better effectuated, was better suited to our conditions than the rule of the common law." Appellees suggest, as the Pollan grant was made in accordance with the empressario agreement with Power and Hewitson, Decree No. 16 of the Congress of Coahuila and Texas, dated March 24, 1825, is controlling, rather than the decrees of 1832 and 1834. Hatch v. Dunn, 11 Tex. 708; Welder v. Lambert, 91 Tex. 510, 44 S.W. 281. Under our construction of the later decrees, it is immaterial which legislative enactments are deemed applicable. None of them provide for sovereign retention of title to the beds of non-perennial streams.

It is made to conclusively appear from the affidavits supporting the motion for summary judgment that Chiltipin Creek is today a non-perennial watercourse. It is referred to as a "dry creek" which never contains water, save for a few holes shaded by trees, except during periods of heavy rain. It also appears that the creek had much the same characteristics in 1834 that it has today. The lands in the John Pollan Grant were classified in accordance with Decree 16, dated March 24, 1825. (There

can be little doubt that the land classification provisions of Decree No. 16 were applicable. Art. 30 of Decree No. 272, dated March 26, 1834, provided that, "hereafter no colonization contract shall be made, and those heretofore made shall be strictly fulfilled, and in entire accordance with the law of the 24th of March, 1925.) Art. 12 of Decree No. 16 refers to "grazing lands or those suitable for stock raising (de agostadero)"; "Irrigable tillage land (de regadio) and that which is not irrigable (de temporal)." The Pollan grant called for "un sitio de agostadero qe ha he pedio inclusa una labor de temporal * * *," that is, one league of pasture land, including a labor of land which was subject to cultivation but dependent solely on ordinary or natural rainfall for its water supply.

This statement in the grant is of importance. It constitutes or reflects an official classification of the land made in pursuance of governmental authority and demonstrates that Chiltipin Creek was not regarded as a reliable source of irrigation. It was considered in 1834, as it is today, a dry creek or "torrent" to which the doctrine of sovereign ownership of stream beds had no application.

■ We hold that the trial court was correct in holding that the bed of Chiltipin Creek passed to John Pollan, under and by virtue of his grant of October 30, 1834.

This holding renders it unnecessary to discuss further matters mentioned in the briefs.

The judgment is affirmed.