

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

April 6, 1961

Honorable Jerry Sadler
Commissioner
General Land Office
Austin, Texas

Opinion No. WW-1034

Re: Authority of Commissioner of
the General Land Office to
issue patent on a fractional
portion of a section of land,
which portion was awarded to
the purchaser in 1909, with-
out excluding from such
patent, the bed of a river
flowing through such land.

Dear Mr. Sadler:

From your opinion request, as well as from a memorandum
brief furnished our respective offices by interested counsel, we
are presented with the following facts:

A section of land was surveyed for the State by a railroad
company, the latter being awarded the adjoining section under the
Act of January 30, 1854 (3 Gam. 1455). Field notes of the State sec-
tion, being Section No. 400, showing a tract 1900 varas square, were
filed in the General Land Office. The State thereafter sold 400
acres to various parties, leaving unsold the NW$\frac{1}{4}$ and N$\frac{1}{2}$ of the SE$\frac{1}{4}$
of said Section 400.

Sec. 6e of the Act of May 16, 1907 (13 Gam. 490), a State
Land Sales Act, provided that "all surveys and unsold portions of
surveys shall be sold as a whole." Accordingly, in 1909, the remain-
der of Section 400 was sold by the State, being classified as
"watered grazing" land. The application to purchase recited the
number of acres at 240 and the price as $1.00 per acre. A down pay-
ment of $6.00 was made and the purchaser executed his obligation to
pay the deferred balance of the purchase price in the sum of $234.00
with 5% interest. The then Land Commissioner endorsed the applica-
tion "Awarded 7-3-09" and signed the endorsement officially. The
Commissioner further signed the following notice of award:

"I have this day accepted said appli-
cation and do hereby award to the applicant
the following land at the price shown thereon,
to-wit: NW$\frac{1}{4}$ and N$\frac{1}{2}$ of SE$\frac{1}{4}$, Section 400. . .
240 acres."

No new field notes were filed at the time of the award covering the fractional portion of the survey.

A short time ago, the present owner of the award completed payment of the purchase price and requested issuance of a patent by your office. A ground survey was made by a licensed State land surveyor and his field notes have been recently tendered to you, reflecting that the Pease River, which you state is a navigable stream, runs through the said land.

You request our opinion as to whether you have the authority to issue a patent covering the said fractional portion of said section without excluding said river bed.

The law has been, at least since 1837, that surveyors in running land lines were not to cross navigable streams. Art. 5302, R.S. In the statute cited, such streams were designated as having "an average width of 30 feet from the mouth up." The purpose of the statute, of course, was to give as many land owners as possible frontage on such streams. Inevitably some surveyors, through errors of judgment or otherwise, actually laid out surveys including a navigable stream within their boundaries, in violation of said statute. Nevertheless, title to the beds of such streams remained in the State. State v. Bradford, 121 Tex. 515, 50 S.W.2d 1065, 1069 (1932). (As to title to beds of streams in civil law grants, see McCurdy v. Morgan, 265 S.W.2d 269 (1954) error ref.)

Article 5414a, popularly known as the Small Bill, enacted in 1929, undertook to validate uncancelled patents and awards, ten years old or older, to lands containing water courses or navigable streams within their boundaries. Further, said Act relinquished to such patentees and awardees and their assignees the beds of such streams, provided that such relinquishment or quitclaim should not cause the survey to exceed the number of acres included in the original grant.

From the facts stated, it is clear that the purchaser actually bought 3/8ths of a section of land, or 240 acres. The field notes of the whole section, 1900 varas square, as prepared by the railroad surveyors, were on file at the time of the sale of the 240 acres. It is well settled that a description of a definite fractional portion of a rectangular land survey, such as a definite quarter or half thereof, is legally sufficient. 14B Tex.Jur. 670, Deeds, Sec. 209, and authorities there cited. It was not necessary for new field notes of the fractional portion of the section to be filed in order to make the award binding on the State.

The Small Bill makes its relinquishment to "patentees and awardees". If the Legislature had intended that only a holder of a patent would receive the benefits of the Act, it would have been unnecessary to use the word "awardee". The award is made when the purchase is made. The patent is not issued until payment is made in full, which is often many years after the award. The Supreme Court in State v. Bradford, supra, indicated that holders of unpatented awards were also covered by the statute when it stated at page 1072:

> "It is therefore shown that the Small
> Bill expressly purports to be retrospective
> and to validate the titles to lands whose
> surveys have heretofore been made across
> streams now claimed to be navigable, and
> which had heretofore been awarded or
> patented." (Emphasis added)

Indeed there would appear to be no valid reason why the Legislature would grant a river bed to a patent holder and withhold same from an awardee who had exercised acts of ownership in his lands for over ten years, but who happened to owe a few dollars on the purchase price of same, or from an awardee who had paid in full for his land but had never taken the trouble to get his patent. The fact that, throughout the Act, the Legislature used the language "patentees and awardees" makes conclusive, we think, its intention to grant the benefits of the Act to awardees without patents. The validating portion of the Act (Section 1) covers stream beds on which "patents or awards" have been issued.

Against the constitutional attack that this was "give away" legislation, the Court in the Bradford case said at page 1071:

> ". . . There is no contention that the
> surveys contain an excess acreage and that
> the patentees and awardees are receiving more
> than their title papers convey. Whatever
> consideration the state asked for the land
> under the law has been paid or agreed to be
> paid by the patentees and awardees. This
> record shows that the state acted in good
> faith in issuing these patents and awards,
> and that they were accepted in good faith by
> the purchasers. Whatever amount of land
> embraced within the patents and awards lying
> in the river bed has been paid for or agreed
> to be paid for by the owners thereof. The
> state for years has received and held the
> consideration paid for the land, and, if it
> is to be retained by the state, the patentees

> and awardees have <u>paid for or agreed to pay</u>
> for land they will not receive. The state
> has a right to exact strict obedience to its
> laws and Constitution, but it also should be
> the policy of the state to deal fairly with
> those who in good faith have accepted its
> offer to purchase public lands upon terms
> fixed by the state. . . ." (Emphasis added)

This language clearly shows that the Court construed the Act as covering awardees whose lands were <u>not yet paid for,</u> and who consequently were not yet entitled to receive patents. Art. 5413, V.C.S.

The purchaser of the 3/8ths of Section 400 bought 240 acres. He obligated himself to pay and did pay $240.00 therefor. Under the reasoning supra, he is entitled to his full complement of acreage within his 3/8ths section, including the river bed if necessary to complete the required 240 acres.

However, as we understand the <u>Bradford</u> opinion, it is not incumbent upon or within the authority of the Land Commissioner to pass upon the question of navigability of the Pease River as it courses through Section 400, nor to pass upon what portion, if any, of the bed of such river passes to the purchaser under the Small Bill. The river, regardless of the language of the patent, as a matter of law belongs entirely to the State, or entirely to the purchaser, or in part to each, depending on whatever portion, if any, is needed to make 240 acres. Heard v. Town of Refugio, 129 Tex. 349, 103 S.W.2d 728, 734 (1932). If the question of ownership becomes material, that is a legal matter to be determined by the courts. At page 1070, the <u>Bradford</u> opinion states:

> ". . . No power under the law is given
> the surveyor or the land commissioner to
> grant soil under navigable waters, and no
> subsequent recognition or confirmation by
> the land commissioner of a survey made to
> pass soil under such waters will be presumed.
> . . .

> "We find nothing in any of the matters
> relied upon which would take the question of
> the navigability or nonnavigability of this
> stream out of the rule stated in article
> 5302. This is an important and valuable
> right. The public policy of this state
> with respect to navigable streams long has
> been established and enforced, and it is
> not a question left to the discretion and

judgment of ministerial officers.  Under
the law, those officers were and are not
clothed with the power to settle questions
of navigability of streams, but, in view
of the very nature and importance of the
matter, for obvious reasons, it is a
question for judicial determination. . . ."
(Emphasis added)

The Court may well have had in mind the very heavy burden
which would have been imposed upon the Land Commissioner, with his
limited staff, in determining the many and complex problems involved
in passing upon such matters and mercifully excused him from the
task.  See, for example, Morgan v. McCurdy, supra; Diversion Lake
Club v. Heath, 126 Tex. 129, 86 S.W.2d 441 (1935); Motl v. Boyd, 116
Tex. 82, 286 S.W. 458 (1926).  The Gradient Boundary by A. A. Stiles,
30 Tex. Law Rev. 305.  The recent requirement by the Commissioner
that a ground survey of the 3/8ths section be made and that detailed
field notes be filed is a matter of mechanics in connection with ob-
taining a patent.  It does not alter the fact that the award in
question for 3/8ths of Section 400 was validated by the Small Bill;
and as soon as all requirements have been met, a patent should issue
therefor, without excluding the river.

## SUMMARY

The Commissioner of the General Land
Office should issue a patent to a fractional
part of a section of land, which fractional
part was awarded in 1909, without excluding
the bed of the Pease River which passes through
such land.

Yours very truly,

WILL WILSON
Attorney General of Texas

By J. Arthur Sandlin
J. Arthur Sandlin
Assistant

JAS:afg

APPROVED:

OPINION COMMITTEE
W. V. Geppert, Chairman

W. Ray Scruggs
Robert T. Lewis
Dudley McCalla
Sam Wilson

REVIEWED FOR THE ATTORNEY GENERAL
By:  Morgan Nesbitt