The STATE BOARD OF WATER ENGINEERS et al., Appellants,

v.

James T. SLAUGHTER et al., Appellees.

No. 14284.

Court of Civil Appeals of Texas.

San Antonio.

July 29, 1964.

Rehearing Denied Sept. 9, 1964.

———◆———

Waggoner Carr, Atty. Gen., Austin, for appellants.

McWhorter, Cobb, Johnson & Cobb, Lubbock, for appellees.

BARROW, Justice.

This suit was brought by the State of Texas, acting through the Texas Water Commission, formerly the State Board of Water Engineers, and Rudolph Hoefs, against James T. Slaughter and others to enjoin defendants from diverting water from Barilla Creek in Pecos County. Slaughter claimed that he held vested appropriative rights in the waters of Barilla Creek which he acquired under the Irrigation Act of 1895 (Texas General Laws 1895, Chap. 21, p. 751), and the trial court sustained his claim. Hoefs lost his rights to Slaughter by prescription and he has not appealed. No rights as riparians are asserted in this appeal.

The State argues that Slaughter (1) failed to comply with the Irrigation Act of 1895, because the State granted flood water rights to Slaughter's predecessor, and such a grant required the construction of a dam or reservoir for storage of flood waters; that all the waters of Barilla Creek are flood waters; (2) if Slaughter's predecessor ever had any rights, they were cut off by a failure to file a statement of those rights as later required by Section 14 of the Act of 1913 (Texas General Laws 1913, Chap. 171, p. 358), and the trial court erred in excluding downstream water permits issued to others along Barilla Creek, which permits would manifest the practice in granting water permits. In our opinion, the trial court correctly construed the Act of 1895 in its judgment, that a dam was not required, that Slaughter held water rights in both the ordinary and flood waters of Barilla Creek; that Slaughter held vested rights under the 1895 Irrigation Act, as distinguished from a license or permit under the 1913 Act, that those rights were not cut off by legislative act, and that the excluded downstream permits were not material to those issues.

Defendants are successors of W. J. and J. A. Burnett to the water rights in controversy on the Lindsey-Slaughter Ranch in Pecos County. Section 6 of the 1895 Irrigation Act authorized the acquisition of appropriative rights by filing and recording a sworn statement in the office of the county clerk which described the works and use of water. On June 21, 1912, the Burnetts filed, in the Irrigation Records of Pecos County, an intention, under the Irrigation Act of 1895, to construct and operate a canal for the purpose of irrigation and stock raising, and to appropriate 200 cubic feet of water per second from Barilla Creek whenever there is water in said creek, including the natural flow, the underflow and the flood waters of Barilla Creek, by use of Burnett Irrigation Canal No. 1. Said canal had a carrying capacity of 200 cubic feet per second of time.

A small diversion dam, hereinafter referred to as "original diversion point," was constructed by the Burnetts shortly thereafter, and water has been diverted since that time. The declaration of intention stated that the canal was intended to supply water for irrigating 800 acres, but, under the evidence, the most land ever irrigated by the Burnetts or their successors was 100 acres. In 1959, defendants entered into a soil conservation program with the U. S. Agriculture Department and constructed a new diversion channel for the purpose of flooding 516.5 acres. Following that action, this suit was filed wherein plaintiff asserted that irreparable injury would be done unless defendants were required to restore the banks and bed of

said watercourse. The trial court found that the Burnetts and their successors had continuously diverted the natural flow, the underflow and the flood waters of Barilla Creek for irrigation and livestock purposes to the extent of 200 cubic feet per second of time, since shortly after the declaration of intention was filed; that the Burnetts had complied with the 1895 Act, and by such compliance had acquired vested property rights in the waters of this creek to this extent; that the 1913 Act requiring registration of the declaration with the State Board was directory only and not calculated to deprive defendants of their vested property rights; that defendants, although continuing to divert water from the "original point," were also diverting water from another point. The judgment decreed that defendants own vested property rights to appropriate the natural flow, the underflow and the flood waters of Barilla Creek at the "original point" to the extent of 200 cubic feet per second of time, but enjoined defendants from diverting any water in excess thereof, or from any other point in the creek without the approval of the State Board.

The trial court's decision that Slaughter's appropriative rights extended to both ordinary and flood waters is correct. The water rights to Barilla Creek were involved in a previous controversy, and its physical characteristics were fully described in Hoefs v. Short, 114 Tex. 501, 273 S.W. 785, 40 A.L.R. 833. The record in the present case establishes that the rainfall in the watershed of Barilla Creek has diminished somewhat since the first case, otherwise the characteristics are the same and therefore will not be described in detail. It is undisputed that this watercourse contains water only after a rainfall in its watershed, which occurs on the average of four to seven times annually. Following such a rainfall water flows for a short time in a defined channel and has economic use and value to the ranchers and farmers located on Barilla Creek.

It was held in the landmark case of Mott v. Boyd, 116 Tex. 82, 286 S.W. 458, that the 1895 Act plainly divided the waters of the rivers of this State into two classes: "First, 'the unappropriated waters of the ordinary flow or underflow of every running or flowing river or natural stream'; and, second, 'the storm or rain waters of every river or natural stream * * * within the arid portions of the state.'" Storm or rain waters were there defined as those above the line of highest ordinary flow which is the highest line of flow which the stream reaches and maintains for a sufficient length of time to become characteristic when its waters are in their ordinary normal and usual condition, uninfluenced by recent rainfall or surface run-off. See also Hoefs v. Short, supra; Humphreys-Mexia Oil Co. v. Arsenaux, 116 Tex. 603, 297 S.W. 225, 53 A.L.R. 1147; Sun Underwriters Ins. Co. of N. Y. v. Bunkley, Tex.Civ.App., 233 S.W.2d 153, writ ref.

The trial court construed the Act of 1895 and held that it did not require a dam or reservoir as a condition precedent to the acquisition of the waters of Barilla Creek. This is a correct construction of the language of Section 8 of the Act. Section 1 divides the water into two classes and declares all unappropriated waters the property of the public and may be acquired by appropriation for the uses and purposes provided in the Act. Sec. 2 provides that storm or rain waters may be held or stored in dams, lakes or reservoirs and diverted for stated purposes. Sec. 3 provides that the ordinary flow or underflow may be diverted from its natural channel for the purposes stated in Sec. 2. Sec. 6 requires every person who has constructed or may construct any ditch, canal, reservoir, dam or lake for the purposes named in the Act to file for record with the county clerk a sworn statement showing approximately the number of acres of land to be irrigated, the name of such ditch or canal, where the headgate is situated, the size and carrying capacity of the ditch, and when the water is to be taken

from a reservoir, dam or lake, the statement above provided for shall show in addition to the ditch and other things provided for, the locality of the proposed dam, reservoir or lake, its holding capacity in cubic feet of water, the acreage and surface feet of land that will be covered and area of watershed. Sec. 7 provides that by compliance with Sec. 6, the right to use of water relates back to when the work commenced, with an additional provision that a failure to file said statement should not work a forfeiture of such theretofore acquired rights or prevent such claimants from establishing such rights in court.

Sec. 8 provides that the right to appropriate the waters of both classes for irrigation purposes may be acquired by filing a sworn statement in writing to be recorded, as provided by Sec. 6, declaring an intention of appropriating such waters. "Said statement shall also show approximately the number of acres of land proposed to be irrigated, the name of such ditch or canal, the point at which the headgate thereof will be situated, the size of the ditch or canal in width and depth, and the carrying capacity thereof in cubic feet per second of time, the name of the person, firm, association or corporation appropriating such water, the name of the stream, and shall attach to such statement a map showing approximately the proposed route of such ditch or canal; and *when the water sought to be appropriated or acquired is storm or rain water,* the statement above required shall also show or describe the locality of the proposed dam, reservoir, or lake * * *." (Emphasis added.)

Appellant urges that this section and particularly the emphasized portion thereof required a different declaration of intention to appropriate storm or rain waters and that same could only be diverted from the storage facilities. A more logical and meaningful construction of this section would be that if the storm or rain waters are to be *acquired* the storage facilities should be described in the declaration. We

see nothing in this Act inconsistent with use of the storm or flood waters for irrigation purposes in the same manner as ordinary flow. To the contrary, the Act contemplates that storm or flood waters would use a ditch or canal in the same manner as ordinary flow or underflow by requiring a description of the ditch or canal. A canal which was so constructed as to divert the ordinary flow or underflow would necessarily divert some storm waters also. It is therefore our opinion that both classes of water were available for this purpose and that by filing the declaration of intention to divert both classes by construction of a diversion channel and subsequent construction and operation of same, the Burnetts acquired rights under the 1895 Act to both classes of water.

Rights acquired under the 1895 Irrigation Act were vested rights which the Legislature could not cut off. In Clark v. Briscoe Irr. Co., Tex.Civ.App., 200 S.W.2d 674, Chief Justice McClendon reviewed the historical background of our water laws and said:

"Nor is there any question but that a water right, when acquired and perfected either under the posting or permit system, constitutes a vested interest in or title to the use of the water thereby appropriated."

In Board of Water Engineers v. McKnight, 111 Tex. 82, 229 S.W. 301, the 1917 Act was held invalid on the ground that it attempted to confer judicial powers upon the State Board of Water Engineers and would deny the parties a judicial determination of their *vested rights* as appropriators of water. See also, Lakeside Irr. Co. v. Markham Irr. Co., 116 Tex. 65, 285 S.W. 593; City of Anson v. Arnett, Tex.Civ.App., 250 S.W.2d 450; Goodwin v. Hidalgo Co. Water Control & Improvement Dist. No. 1, Tex.Civ.App., 58 S.W.2d 1092; Fairbanks v. Hidalgo Co. Water Imp. Dist. No. 2, Tex.Civ.App., 261 S.W. 542; 30 Tex. Law Rev. 669.

The 1913 Act made a radical change in the statutory method of appropriating water

by creating the State Board of Water Engineers and introducing procedures for administrative control of waters. It, for the first time, began the issuance of permits or licenses are distinguished from rights. The Act expressly recognized the validity of water rights which had already vested. Sec. 1 declared that the unappropriated waters of all classes, the title to which had not already passed from the State, were the property of the State and thereby subject to the Act. Section 98 provided:

"Nothing in this Act contained shall be held or construed to alter, affect, impair, increase, destroy, validate or invalidate any existing or vested right, existing at the date when this Act shall go into effect."

Appellant urges that Section 14 of the 1913 Act required owners of water rights acquired under previous statutes to timely record same with the Board of Water Engineers in order to retain those rights.[1] The State reasons that those who failed to meet these requirements were cut off and lost their rights. Slaughter's predecessors did not file their declaration, but on the authority stated above and the recognition of existing rights in Section 98, this legislative requirement did not destroy the vested rights.

Appellant relies upon In re Willow Creek, 74 Or. 592, 144 P. 505, 146 P. 475, wherein the Oregon Supreme Court construed the Oregon Water Code of 1909. The Court upheld the constitutionality of the statute which required owners of water rights to assert them before the water board WHEN SERVED WITH NOTICE TO DO SO, and that they would be bound by the board's determination. The Court expressly held that appropriative water rights were vested rights and could not be taken away by legislative enactment, but could be regulated. It was there held that the Oregon water code properly protected these constitutional rights by the notice requirement and by provision for judicial determination by the circuit court. It should be noted that similar provisions of the Texas 1917 Act were held unconstitutional in Board of Water Engineers v. McKnight, supra.

[1] "Sec. 14. Statement to be Filed with Board, etc.—Every person, association of persons, corporation, or irrigation district, who shall have heretofore filed for record, or shall hereafter, in compliance with the provisions of section twelve, file for record the sworn statement in writing as set out therein, shall, within one year after this Act shall take effect, file in the office of the board a certified copy of such sworn statement and a true copy of the map as described in Section twelve, and in addition thereto, a sworn statement showing what has been done under or in pursuance of such filing or statement; what work or construction has been completed or partially completed; what portion of said work is in use and what portion is in possession and not in actual use; what amount or volume of water is being actually taken, diverted or used and for what purpose; and the amount or volume of water, as near as may be, that has been diverted, taken or used, and for what purpose, in each and every year since such original filing was made; and if such water was diverted, taken or used and for what purpose; in each and every year since such original filing was made; and if such water was diverted, taken or used for irrigation, the statement shall show, as near as may be, a description and the area of lands being irrigated at said time, and the number and names of the users and consumers of water at said time. * * *

"Every person, association of persons, corporation or irrigation district, who has, prior to the first day of January, 1913, actually taken or diverted any water and applied same to any of the uses and purposes named in this Act, and is at the date of the filing of the statement herein provided to be filed, continuing to use and apply such water, who shall, within one year after this Act shall go into effect, file with the board the sworn statement last described in this Section, shall, as against the State, have the right to take and divert such water to the amount or volume thus being actually used and applied; provided, that nothing herein shall be construed to affect or relate to any priority or right as between any claimants, appropriators, or users from any source of water supply."

The trial court properly held that the requirement of Sec. 14 of the 1913 Act, regarding registration of existing rights was directory in that the Act expressly recognized the validity of such rights. Furthermore, the Act could not constitutionally deprive the Burnetts of their vested rights for failure to record same. Board of Water Engineers v. McKnight, supra; Motl v. Boyd, supra; 28 T.L.R. 940.

The statement of intent which Slaughter's predecessors filed stated an intent "to appropriate 200 second feet of water from Barilla Creek in Pecos County, Texas, whenever there is water in said creek; and to appropriate all the waters including the natural flow, the underflow and the flood waters now running down or that may hereafter run down said creek up to the amount of 200 cubic feet of water per second of time * * *." The State says that this is an inadequate description. In our opinion, the words "whenever there is water in said creek" shows, contrary to the State's contention, that the appropriator had no intent of acquiring a right to 200 cubic feet of water during all the time. The creek flows intermittently, but when it flows, he intended to draw water at that rate. In our opinion, this was an adequate description.

There is, however, a limitation upon the intent. The right is measured and limited by the continued diligent development of the appropriator. The rights which Slaughter's predecessors acquired under the Irrigation Act of 1895 is measured by the sworn statement showing the number of acres "that will be irrigated," Section 6, Act of 1895, or "approximately the number of acres of land proposed to be irrigated," Section 8, Act of 1895, "the acreage of land that will be covered," Section 8, Act of 1895. While Slaughter's predecessors acquired a vested right, they irrigated only 100 acres of land, and it was not until 1959 that they proposed the irrigation of additional lands. A reasonable construction of the 1895 Act would be that there must be a continued and diligent development by appropriators under the filing. Hidalgo County Water Control and Improvement Dist. No. 1 v. Goodwin, Tex. Com.App., 25 S.W.2d 813, said that the several laws, including that of 1895, are liberally construed and given such effect as to best promote irrigation and thereby carry out the purpose of the Legislature. It stated that the State must be the one that undertakes any forfeiture or cancellation of water rights held under the several laws. In our opinion, a delay of more that four decades is not such a continued and diligent development, as a matter of law, as was contemplated by the Legislature in enacting the 1895 Act. Slaughter's rights extend to but not beyond the acreage which he has put to beneficial use by continued and diligent development. In this case, it was 100 acres.

The judgment of the trial court is reformed so that Slaughter may use up to 200 cubic feet of water per second of time when there is water in the Barilla Creek, but for the irrigation of 100 acres only, and as reformed the judgment is affirmed.