**John WATTS, Appellant**

v.

**The STATE of Texas, Appellee.**

**No. 14–99–00811–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

July 1, 2004.

William Paul Mewis, Katy, TX, for appellants.

Roger A. Haseman, Houston, TX, for appellees.

Panel consists of Justices YATES, HUDSON, and FROST.

## CORRECTED MAJORITY OPINION ON REHEARING AFTER REMAND

J. HARVEY HUDSON, Justice.

Appellant, John Watts, was charged by information with two counts of water pollution. A jury subsequently returned a general verdict of guilty. On original submission, we affirmed the convictions. *Watts v. State,* 56 S.W.3d 694 (Tex.App.-Houston [14th Dist.] 2001), *rev'd,* 99 S.W.3d 604 (Tex.Crim.App.2003). A central issue in the trial of that case was whether a drainage ditch constituted "water in the state," and, thus, was protected from pollution by the Texas Water Code. *See* TEX. WATER CODE ANN. § 7.145 (Vernon 2000). Relying upon the authority of *American Plant Food Corp. v. State,* 587 S.W.2d 679 (Tex. Crim.App.1979), the trial court instructed the jury that a "drainage ditch was one of the types of surface water the legislature sought to protect under the Water Code Act." We approved the trial court's instruction.

The Texas Court of Criminal Appeals, however, held the instruction was improper. The court reasoned the trial judge erred by (1) taking judicial notice of the law in the jury's presence and (2) commenting on the weight of the evidence. *Watts v. State,* 99 S.W.3d 604, 611–13 (Tex. Crim.App.2003). The court then remanded the cause to this court to conduct a harm analysis.

## STANDARD OF REVIEW

■ The essence of the error here is that by improperly taking judicial notice that a drainage ditch is "water in the state," the trial court thereby commented on the weight of the evidence. A trial court improperly comments on the weight of the evidence if it makes a statement that implies approval of the State's argument, that indicates any disbelief in the defense's position, or that diminishes the credibility of the defense's approach to its case. *Hoang v. State,* 997 S.W.2d 678, 681 (Tex.App.-Texarkana 1999, no pet.). Here, one of the contested issues before the jury was whether a drainage ditch, in which water flowed only intermittently, was "water in the state."

■ Although the trial court did not *require* the jury to find the drainage ditch was protected by the Texas Water Code, it did *authorize* the jury to accept this matter as a conclusive fact. Because appellant may have been deprived of his right to have a jury determine this issue, we will review the error under the standard for "constitutional error." *See* Tex.R.App. P. 44.2(a).[1] Where the appellate record in a criminal case reveals constitutional error, we must reverse the judgment of conviction unless we determine beyond a reasonable doubt that the error did not contribute to the conviction. *Id.*

## HARM ANALYSIS

To the jury, the language and conduct of the trial court have a special and peculiar weight. *Devis v. State,* 18 S.W.3d 777, 782 (Tex.App.-San Antonio 2000, no pet.). In fact, jurors are prone to seize with alacrity upon any conduct or language of the trial judge which they may interpret as shedding light upon his or her view of the weight of the evidence, or the merits of the issues involved. *Bachus v. State,* 803 S.W.2d 402, 405 (Tex.App.-Dallas 1991, pet. ref'd). Thus, in reviewing the possible prejudice to appellant, we will presume the jury accepted the trial court's invitation to find as a conclusive fact that a drainage ditch is "water in the state."

Appellant was charged by information. The information appears to contain two paragraphs. Although they are not styled as such, these "paragraphs" are, in fact, separate counts because each alleges a different offense.

The first count purports to allege an offense under Section 7.145(a) of the Texas Water Code. TEX. WATER CODE ANN. § 7.145(a) (Vernon 2000). The second count alleges an offense under Section 7.146(a) of the Texas Water Code. TEX. WATER CODE ANN. § 7.146(a) (Vernon 2000). Each offense "requires proof of a fact which the other does not." *See Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932) (setting

---

1. We do not mean to suggest that every comment on the weight of the evidence constitutes "constitutional error." A "constitutional error" is an error that directly offends the United States Constitution or the Texas Constitution without regard to any statute or rule that might also apply. *Alford v. State,* 22 S.W.3d 669, 673 (Tex.App.-Fort Worth 2000, no pet.). Whether a comment on the weight of the evidence constitutes "constitutional error" depends upon the context in which it is made. For example, where an inadvertent comment is made by the trial judge in the presence of the jury that could be interpreted to suggest the trial judge holds an opinion as to some factual issue in the case, the error may prejudice the defendant, but it would not necessarily have the effect of deciding the issue or removing it from the jury's consideration. However, if the comment is improperly inserted in the court's charge, it may remove some element or fact issue from the jury's consideration and thereby deprive the defendant of a jury trial on the disputed element or fact issue. Only in the later case would the erroneous comment constitute constitutional error.

forth the test for distinguishing between the same or different offenses). In reviewing the statutory elements applicable to the facts of this case, a person is strictly liable under Section 7.145 and commits an offense if he: (1) intentionally or knowingly, (2) discharges or allows the discharge, (2) of a waste or pollutant, (3) into or adjacent to "water in the state," (4) that causes or threatens to cause water pollution, and (5) such discharge is not in strict compliance with all required permits or with a valid and currently effective order issued or rule adopted by the appropriate regulatory agency. A person commits an offense under Section 7.146 if he: (a) intentionally or knowingly, (2) discharges or allows the discharge, (3) of a waste or pollutant, (4) from a point source, (5) in violation of Chapter 26 of the Texas Water Code, *i.e.*, discharges sewage into or adjacent to any "water in the state."

■ When multiple offenses are committed during a single criminal episode, they may be joined in a single charging instrument with each offense alleged in a separate count. TEX.CODE CRIM. PROC. ANN. art. 21.24(a) (Vernon 1989). Because a statute sometimes provides for various manner and means of committing an offense, each count may contain as many separate paragraphs charging alternate manner and means of committing the offense as necessary. TEX.CODE CRIM. PROC. ANN. art. 21.24(b) (Vernon 1989). Thus, as a general rule, a "count" is used to charge the offense itself and a "paragraph" is that portion of a count which alleges the method of committing the offense. *Owens v. State*, 96 S.W.3d 668, 673 (Tex.App.-Austin 2003, no pet.).

■ It is permissible to join two or more offenses in the same charging instrument, and the State is not required to elect between counts. *Thacker v. State*, 999 S.W.2d 56, 63 (Tex.App.-Houston [14th Dist.] 1999, pet. ref'd). The jury, however, must be instructed to return a finding of guilty or not guilty in a separate verdict as to each count submitted to them. TEX. CODE CRIM. PROC. ANN. art. 37.07, § 1(c) (Vernon 1981). Here, the counts were not separately submitted to the jury; rather, the jury returned a single verdict which declared: "We, the Jury, find the Defendant 'Guilty.'" Appellant did not object to the charge and has not raised the error on appeal. Under these circumstances, the general verdict operates as a conviction of all counts. *Lovejoy v. State*, 40 Tex.Crim. 89, 48 S.W. 520, 522 (1898). Moreover, if necessary, we are free to assign the verdict to any count supported by the evidence. *Smothermon v. State*, 383 S.W.2d 929, 931 (Tex.Crim.App.1964). Thus, while the trial court's instruction regarding the drainage ditch had direct applicability only to the first count of the information (which was the only count alleging a drainage ditch to be "water in the state"), we must examine the effect of the charge upon the general verdict.

The first count alleges appellant discharged sewage into or "adjacent" to a drainage ditch. Although the State offered some evidence that appellant's sewage could potentially contaminate the drainage ditch if there was sufficient rainfall to carry it into the ditch, the State's primary theory of prosecution appears to have been that appellant unlawfully discharged sewage "adjacent" to the drainage ditch. The record, for example, shows the discharge of sewage was 140 to 150 feet from the county drainage ditch. A small trench had been constructed on appellant's property to facilitate drainage directly into the county drainage ditch. However, due to the distance between the discharge and the ditch, no sewage was observed draining into the ditch. In fact, it was conceded by the State's witnesses that during hot, dry weather, the sewage did not contami-

nate the ditch.[2] However, the State also presented testimony that even a "little" rain could potentially wash sewage from appellant's property into the ditch. From there, the polluted water could enter Coal Creek, which, in turn, emptied into White Oak Bayou, which, in turn, eventually emptied into Buffalo Bayou and Galveston Bay. Finally, appellant, himself, testified that surface water runoff from his property flowed into the ditch.

However, even if the jurors were permitted to convict appellant under the first count for discharging sewage *adjacent* to the drainage ditch, no conviction was possible unless they also found the ditch to be "water in the state." Historically, the term "water" has been used in many different contexts in Texas jurisprudence. Distinctions have been drawn between navigable and non-navigable waters,[3] surface and underground waters,[4] waters in a natural watercourse and those that are diffused on the surface.[5] Many of these distinctions were recognized by courts while either attempting to adjudicate ownership of water or determining riparian rights regarding its use. It was well established early in the twentieth century that waters which "ooze through the soil" (percolating ground water) and waters which "diffuse or squander themselves over the surface, following no definite

course" (diffused surface water) belong to the owner of the land. *Hoefs v. Short,* 190 S.W. 802, 806 (Tex.1916). Water in a watercourse, however, is the property of the State, held in trust for the public. *Domel v. City of Georgetown,* 6 S.W.3d 349, 362 (Tex.App.-Austin 1999, pet. denied). Diffused surface water (belonging to the land owner) becomes a natural watercourse (belonging to the State) at the point where it begins to form a reasonably well-defined channel, with bed and banks, or sides and current, although the stream itself may be very small and the water may not flow continuously. *International–Great N.R.R. Co. v. Reagan,* 121 Tex. 233, 49 S.W.2d 414, 418–19 (1932). However, if the land owner can capture or impound "casual and vagrant" waters before they coalesce into a natural gully, stream, or other watercourse, they remain his property. *Hoefs,* 190 S.W. at 806.

With respect to pollution, however, the legislature clearly sought to abolish these common law distinctions between private and public waters. It is an offense to pollute *any* "water in the state." Tex. Water Code Ann. §§ 7.145(a) & 26.121(a)(1) (Vernon 2000). "Water in the state" is defined as:

> ... groundwater, percolating or otherwise, lakes, bays, ponds, impounding reservoirs, springs, rivers, streams,

---

**2.** The record also contains expert testimony that the polluting effect of sewage, discharged on the ground, dissipates over a period of 48 hours due to bacterial activity. Again, therefore, the only danger of polluting state water occurred during times of rainfall when the runoff carried fresh sewage into the drainage ditch.

**3.** Navigable streams, for example, are held by the State in trust for the benefit of the public. *Guadalupe–Blanco River Auth. v. Pitonyak,* 84 S.W.3d 326, 340 (Tex.App.-Corpus Christi 2002, no pet.). In fact, the State holds title to all navigable riverbeds. *Brainard v. State,* 12 S.W.3d 6, 31 n. 3 (Tex.1999).

**4.** The distinction between surface and underground water is important in determining ownership of the water. Texas courts have also long considered water as part of the soil itself, and ownership of underground water has historically come with ownership of the surface. *Dyegard Land Partnership v. Hoover,* 39 S.W.3d 300, 311 (Tex.App.-Fort Worth 2001, no pet.)

**5.** Damages stemming from the diversion of water are sometimes determined by whether the water at issue was diffused surface water or water in a natural water course. *Dalon v. City of DeSoto,* 852 S.W.2d 530, 538–39 (Tex. App.-Dallas 1992, writ denied).

creeks, estuaries, wetlands, marshes, inlets, canals, the Gulf of Mexico, inside the territorial limits of the state, and all other bodies of surface water, natural or artificial, inland or coastal, fresh or salt, navigable or nonnavigable, and including the beds and banks of all watercourses and bodies of surface water, that are wholly or partially inside or bordering the state or inside the jurisdiction of the state.

TEX. WATER CODE ANN. § 26.001(5) (Vernon Supp.2004). By this broad definition the legislature has clearly sought to include *all* water found within the environment—whether impounded or free-flowing, above or beneath the surface of the ground, in or out of a watercourse, salt or fresh, or publicly or privately owned. In short, under the definition provided by the legislature, it is difficult to envision any liquid water in the environment, apart from free-falling rain drops, that is not "water in the state."

■ However, as the Court of Criminal Appeals specifically observed, the trial court did not instruct the jury that *water* in a drainage ditch is "water in the state," but rather that the ditch itself is "water in the state." Appellant contends that such an instruction is nonsensical, but we are persuaded the trial judge's instruction, although inappropriate, was entirely accurate. The definition of "water in the state" includes not only liquid water, but the beds and banks of all watercourses. The term "watercourse" is not defined by the Water Code; thus, it must be given the meaning it enjoys in ordinary usage. A "watercourse" is any "body of water flowing in a reasonably definite channel with bed and banks." BLACK'S LAW DICTIONARY 1585 (7th ed.1999). It may be either artificial, *i.e.*, man-made, or natural. *Id.* at 1586. Here, the legislature has included in its definition of "water in the state" the beds and banks of *all* watercourses (as distinguished from merely natural watercourses). *Compare and contrast* TEX. WATER CODE ANN. § 26.001(5) (specifying "all watercourses") *with* TEX. WATER CODE ANN. § 36.001(8)(E) (Vernon Supp.2004) (specifying only "natural watercourses") *and* TEX. LOC. GOV'T CODE ANN. § 402.044(3) (Vernon Supp.2004) (specifying "natural or artificial watercourses").

■ Moreover, the fact that a watercourse contains water only intermittently does not alter its character as a watercourse. The current of water in a watercourse need not be continuous and the watercourse may be dry for long periods of time. *Hoefs v. Short,* 114 Tex. 501, 273 S.W. 785, 787 (1925); *Domel,* 6 S.W.3d at 362. Accordingly, a drainage ditch retains its character as a "watercourse" during flood or drought, whether wet or dry. Because the bed of a watercourse may be polluted without regard to whether it currently contains liquid water, the trial court's instruction was a correct statement of the law.

■ However, in light of the Court of Criminal Appeal's opinion, it appears the trial court's error was not so much in giving the jury an *incorrect* statement of the law, as it was in giving *any* statement identifying or defining "water in the state" by means other than the statutory definition propounded by the legislature. Thus, the main thrust of the court's opinion seems to be the notion that a trial court should not instruct the jury with regard to "judicial decisions or any statements that an appellate court has held that proof of 'X' fact fulfills 'Y' legal requirement." *Watts,* 99 S.W.3d at 611. Therefore, notwithstanding the accuracy of the trial court's instruction, it should not have been given to the jury. Thus, we must now decide whether an instruction, although accurate in its content, can nevertheless be harmful to the defendant.

In his closing argument to the jury, appellant's counsel attempted to persuade jurors that a drainage ditch was not "water in the state" because the words "drainage ditch" do not appear in the statutory definition of "water in the state." [6]

6. This is the same argument advanced in the concurring opinion. Justice Frost, for example, relies heavily upon the fact that the word "ditch" is used by the Legislature in describing a "point source," but is not used in defining a "water in the state." Because the Legislature has used the word "ditch" in other statutes, but has failed to use it in defining a "water in the state," the concurring opinion suggests this is some evidence the Legislature did not intend for ditches to be watercourses.

In defining a "point source," the Legislature attempted merely to describe every conceivable place or device through which pollution might be discharged into water. Thus, a "point source" is "any discernible, confined and discrete conveyance ... from which pollutants or wastes are or may be discharged into or adjacent to any water in the state." TEX. WATER CODE ANN. § 26.001(21) (Vernon Supp.2004). Examples provided by the Legislature include pipes, *ditches*, channels, tunnels, conduits, wells, discrete fissures, containers, rolling stock, animal feeding operations, vessels, etc. *Id.* The inclusion of ditches as possible point sources in no way, however, implies that ditches are not also watercourses.

A "drain," for example, may sometimes be a "ditch." *See Lee v. Grupe*, 223 S.W.2d 548, 552 (Tex.Civ.App.-Texarkana 1949, no writ) (holding that "drain" is synonymous with "ditch"); BLACK's LAW DICTIONARY 509 (7th ed.1999) (stating that a drain is a "conduit for draining liquid, as a ditch or pipe."); WEBSTER's THIRD NEW INTERNATIONAL DICTIONARY 685 (1993) (defining "drain" as "an artificial channel by means of which liquid or other matter is drained or carried off: SEWER, SINK, TRENCH ... a watercourse esp. when narrow"). As "an artificial conduit or channel designed to carry off water, sewage, filth, refuse, etc." a "drain" fits the definition of a "point source." *See Peterson v. Barron*, 401 S.W.2d 680, 686 (Tex.Civ.App.-Dallas 1966). Yet, a "drain" may also be a watercourse. *Id.*

A ditch is simply "an artificial stream." *Lewis v. San Antonio River Authority*, 343 S.W.2d 475, 482 (Tex.Civ.App.-San Antonio 1960), *aff'd*, 363 S.W.2d 444 (Tex.1962). As such, a ditch is an artificial watercourse to which, under certain circumstances, even riparian rights may attach. *Id.* at 482–83. Thus, the term "watercourse" is broad enough to include "artificial watercourses, whether employed for traffic, for irrigation, or for drainage." *Chicago, R.I. & G. Ry. Co. v. Tarrant County Water Control & Improvement Dist. No. 1*, 123 Tex. 432, 73 S.W.2d 55, 70 (1934). Accordingly, a dredged channel is a "man-made watercourse." *See Selkirk Island Corp. v. Standley*, 683 S.W.2d 793, 794 (Tex. App.-Corpus Christi 1984, writ ref'd n.r.e.) (holding that where Colorado River runs through a dredged channel it remains a watercourse even if man-made).

Justice Frost also contends a watercourse must, by definition, contain water. The argument, while cogent, ignores decades of contrary jurisprudence. A watercourse may, in normal times, contain very little, if any, water. *Lower Colorado River Authority v. Texas Dept. of Water Resources*, 638 S.W.2d 557, 581 (Tex.App.-Austin 1982), *rev'd on other grounds*, 689 S.W.2d 873 (Tex.1984). The only prerequisite for a watercourse is that it have a reasonably well defined channel, with bed and banks, or sides and current, although the stream itself may be very small and the water may not flow continuously. *International-Great Northen R. Co.*, 49 S.W.2d at 418. Thus, the Leon River is a watercourse even if it does not flow for six or eight months at a time. *Texas Co. v. Burkett*, 117 Tex. 16, 296 S.W. 273, 275–76 (1927). Likewise, Barilla Creek, a dry bed in Pecos County that contains water four to seven times annually for a short time after a rainfall, is, nevertheless, a watercourse. *See State Bd. of Water Engineers v. Slaughter*, 382 S.W.2d 111, 113 (Tex.Civ.App.-San Antonio 1964, writ ref'd n.r.e.). Even when water is so intermittent and of such minimal quantity as to eliminate the watercourse as a potential source of irrigation, and thus free of riparian rights, it remains a watercourse. *See McCurdy v. Morgan*, 265 S.W.2d 269, 271 (Tex.Civ.App.-San Antonio 1954, writ ref'd). Accordingly, Chiltipin Creek, a dry creek in San Patricio County that never contains water except during periods of heavy rain is still a watercourse. *Id.*

If the concurring opinion is correct, a person could dump noxious substances into a dry streambed or ditch without violating the statutes at issue even if the bed was shown to have water in it the day before and the day after the dumping of the pollution. Surely,

Counsel's argument had no legal merit, but statutes are not always drafted so as to "exclude every misinterpretation capable of occurring to intelligence fired with a desire to pervert." *See Paraiso v. United States,* 207 U.S. 368, 372, 28 S.Ct. 127, 52 L.Ed. 249 (1907). While we are persuaded that a drainage ditch is, as a matter of law, "water in the state," we also recognize that without the benefit of the trial court's instruction, it is conceivable appellant's counsel might have induced the jury to believe otherwise. Accordingly, we cannot say beyond a reasonable doubt that the trial court's instruction did not contribute to appellant's conviction under the first count of the information.

With respect to the second count, the State did not allege a drainage ditch, *i.e.,* it did not identify the "water in the state." Thus, the jury was authorized to convict appellant under the second count if it found he discharged sewage from a point source into or adjacent to any "water in the state." [7] The evidence indicates several watercourses were nearby and subject to pollution by appellant's sewage if sufficient rainfall carried it into the ditch, and hence to Coal Creek, White Oak Bayou, Buffalo Bayou, etc. However, the State's theory of prosecution, as evidenced by the record, was that an offense was committed when the appellant dumped sewage adjacent to the drainage ditch and, thus, adjacent to "water in the state." Accordingly, the second count fairs no better than the first-appellant was potentially prejudiced by the trial court's instruction. While it is unseemly to predicate reversible error upon an accurate statement of the law, the

Court of Criminal Appeals clearly suggests by its opinion that an appellant may be harmed by such an instruction.

Because we cannot find beyond a reasonable doubt that the instruction did not contribute to the conviction, the judgment of the trial court is reversed and the cause is remanded for a new trial.

FROST, J., concurring.

FROST, Justice, corrected concurring opinion on rehearing after remand.

I respectfully concur in the court's judgment, but I write separately to address the trial court's instruction to the jury that a ditch itself is "water in the state."

The majority concludes the trial court's instruction, although inappropriate, was entirely accurate. A review of the statutory definition of "water in the state" and an analysis of parts of the Texas Water Code using the word "ditch" suggest otherwise. Though many ditches may fall within the definition of "water in the state," all ditches do not, as a matter of law, constitute "water in the state." The majority is correct in noting that the definition of "water in the state" includes not only water, but the beds and banks of all watercourses and bodies of surface water. *See* TEX. WATER CODE ANN. § 26.001(5) (Vernon Supp.2004). However, this definition still presupposes that water is in some way present, whether it be constant or intermittent,[1] so that the beds and banks still pertain to "watercourses" or "bodies of surface water." Indeed, the definition on which the majority relies describes a watercourse as any *"body of water* flowing ... with bed and

---

the Legislature did not intend a construction so at odds with public policy.

**7.** "Adjacent" is not defined by the Water Code. In common usage, the term means "not distant or far off," it was "nearby but not touching." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 26 (1993).

**1.** The hypothetical presented in the last paragraph of footnote 6 of the majority opinion presupposes that water is in some way present. Therefore, the hypothetical ditch would qualify as a "watercourse" and the hypothetical dumper could not act with impunity.

banks." BLACK'S LAW DICTIONARY 1585 (7th ed.1999) (emphasis added). Under this definition, the bed and banks are part of an existing body of water but are not themselves "water."

Notably, although the Texas Legislature refrained from using the word "ditch" when defining "water in the state," it included the word in many other sections of the Water Code. In several of these sections, the legislature used "watercourse" and "ditch" separately. *See, e.g.,* TEX. WATER CODE ANN. § 36.001(8)(E) (Vernon 2000) (defining "waste" as, among other things, "wilfully or negligently causing, suffering, or allowing groundwater to escape into any river, creek, natural *watercourse,* depression, lake, reservoir, drain, sewer, street, highway, road, or road *ditch* ...") (emphasis added); TEX. WATER CODE ANN. § 56.128 (2002) (describing injury to a drainage canal or ditch as "[a]ny person who wilfully fills up, cuts, injures, destroys, or impairs the usefulness of any canal, drain, *ditch, watercourse* ...") (emphasis added); TEX. WATER CODE ANN. § 56.242(d) (2002) (stating that "[t]he board may issue negotiable notes to pay any lawful expenditure of the district, other than principal and interest on debt, including all costs to improve or repair any existing drainage, canal, *ditch, watercourse* ...") (emphasis added). The legislature's separate use of the words "watercourse" and "ditch" in these sections suggests that the latter is not necessarily always included in the definition of the former. *See City of San Antonio v. Boerne,* 111 S.W.3d 22, 25 (Tex. 2003) (stating that courts interpret a statute so as to give effect to every part thereof). If the legislature intended to include "ditch" in the definition of "water in the state," it could have inserted the word quite easily as it did in these and other instances.

For example, the legislature used the word "ditch" in the Water Code's definition of "point source." *See* Tex. Water Code Ann. § 26.001(21) (Vernon 2000). A "point source" is defined as "any discernible, confined and discrete conveyance, including but not limited to any ... *ditch* ...." *Id.* (Emphasis added.) "Point source" and "water in the state" are later used in section 26.121 to describe unauthorized discharges. That section states: "Except as authorized by the commission, no person may discharge any pollutant, sewage, municipal waste, recreational waste, agricultural waste, or industrial waste *from any point source into any water in the state.*" TEX. WATER CODE ANN. § 26.121(d) (emphasis added). The language in this section, coupled with the foregoing definitions for these terms, suggests that a "point source" allows a contaminant to flow into "water in the state." It does not support the notion that a "point source" is itself "water in the state." Because the Texas Legislature did not include "ditch" in the definition of "water in the state," it is logical to conclude that all ditches do not necessarily fall under this definition, only those that otherwise come within the language of the definition.

Moreover, as the Court of Criminal Appeals has noted, the trial court's oral instruction to the jury did not accurately describe the situation in *American Plant Food Corporation v. State. See Watts v. State,* 99 S.W.3d 604, 614 n. 26 (Tex.Crim. App.2003). In *American Plant Food,* the Court of Criminal Appeals found that "drainage ditch water" was a type of surface water contemplated by the legislature under the section of the Water Code in effect at that time. *American Plant Food Corp. v. State,* 587 S.W.2d 679, 682 (Tex. Crim.App.1979). Here, the trial court, perhaps inadvertently as suggested by the Court of Criminal Appeals, omitted the word "water" and instructed the jury that the drainage ditch itself was a type of surface water protected under the Water Code Act. This error was then reenforced

by the State during its closing argument when the prosecutor told the jury: *"And judicial notice of the fact that another Court, a hirer [sic] Court, the highest Court in Texas has held that drainage ditches are entitled to the protection of this statute. I think that's pretty clear."* [2] The State emphasized it again when the prosecutor stated, *"[Y]ou know that now a drainage ditch in cases can be accepted as a water in the State."* [3] The jury should have been free to read the undefined terms in the definition of "water in the state" to have any meaning acceptable in common parlance. *See Vernon v. State*, 841 S.W.2d 407, 409 (Tex.Crim.App.1992) (stating that jurors are free to read undefined statutory terms to have any meaning acceptable in common parlance). But, the jury may have interpreted the trial court's comments as an indication that all dry ditches are "water in the state" as a matter of law, even though the court's charge and the Water Code do not say this.[4] The State's reinforcement of this notion in its closing argument could only have exacerbated the trial court's misstatement.

Appellant had a right to a jury verdict based on the jury's determination of the meaning of the undefined statutory terms, in accordance with common parlance and understanding. *See Vernon*, 841 S.W.2d at 409. This court cannot conclude beyond a reasonable doubt that the trial court's inaccurate characterization of the holding in *American Plant Food* did not contribute to appellant's conviction. For this reason, we must find the error harmful and reverse the trial court's judgment.

---

**2.** Emphasis added.

**3.** Emphasis added.

**4.** Moreover, although every dry ditch has the potential to become a "watercourse" and thus "water in the state," a dry ditch is not *per se* a "watercourse."